The issue presented in these cases is whether, consistent with the requirements of the Due Process Clause of theFourteenth Amendment to the United States Constitution, defendants D.H. Cole, Dr. DeWitt T. Hunter, Dr. Toni E. Leggs, Dr. F. Rene Modglin, and Dr. Choon S. Koo, who are all California residents, and Damon Reference Laboratories ("Damon") and Hems Brothers Mortuaries, Inc. ("Hems Brothers"), both of which are California corporations, have sufficient contacts with this state to make it fair and reasonable to require them to come here from California to defend against the present action.
Bettie Knowles, a resident of Baldwin County, Alabama, and the widow of Albert Hill "Pete" Knowles, and other family members sued the defendants in the Circuit Court of Baldwin County, seeking damages for the alleged wrongful handling of Mr. Knowles's body.[1] Plaintiffs sought recovery under various theories, including breach of contract, negligence, wantonness, fraud, outrageous conduct, and wrongful interference with a dead body. The defendants filed motions to dismiss, with supporting affidavits, on the ground of, inter alia, lack of inpersonam jurisdiction. The plaintiffs countered with the affidavit of Mrs. Knowles. Following a hearing, the trial court concluded that the contacts of Cole, Damon, and Drs. Hunter, Leggs, Modglin, and Koo with this state were not sufficient to render them amenable to suit here, and dismissed them from the lawsuit. The trial court concluded, however, that it had jurisdiction over Hems Brothers and denied its motion to dismiss. The plaintiffs appealed from the judgments of dismissal, which were certified final pursuant to Rule 54(b), A.R.Civ.P. Pursuant to Rule 5, A.R.App.P., Hems Brothers was granted permission to appeal from the interlocutory order denying its motion to dismiss. These appeals were consolidated for purposes of this opinion. We affirm as to each.
The record reveals the following: Mr. Knowles died of natural causes in Imperial County, California, while on a trip hauling produce from Alabama to California. His body was discovered in his employer's eighteen-wheel tractor trailer rig. Mr. Knowles was a resident of Baldwin County, Alabama, at the time of his death. Mr. Knowles's body was taken to Hems Brothers, where it remained until an autopsy was performed by Dr. Hunter. Drs. Hunter, Leggs, Modglin, and Koo are directors of Damon. Cole, a deputy coroner with the Imperial County sheriff's department, investigated Mr. Knowles's death and signed the death certificate. At the request of Norris Funeral Home, Inc. ("Norris"), of Bay Minette, Alabama, Hems Brothers prepared Mr. Knowles's body for shipment to Alabama and hired a San Diego, California, company to transport it to an airport in San Diego, where it was placed on board a Delta Airlines flight to Alabama. Hems Brothers billed Norris for its services, a casket, and other expenses associated with the handling and transportation of the body. Hems Brothers also mailed a statement *Page 565 
directly to Mrs. Knowles. At Norris's suggestion, neither Mrs. Knowles nor any other member of Mr. Knowles's family viewed the body upon its return to Alabama. Mrs. Knowles stated in her affidavit that a representative of Norris had indicated to her that the body was in a state of decomposition and that that representative had agreed to view and to positively identify the body as being that of Mr. Knowles. Mrs. Knowles further stated that such an identification was not made. Mrs. Knowles also stated in her affidavit that, subsequent to the funeral and burial of her husband's body in a family plot in Baldwin County, she received a copy of an autopsy report from Damon and its directors, which described a body that was different from that of her husband's in several material respects. Damon and Drs. Hunter, Leggs, Modglin, and Koo all denied in their respective affidavits ever having such contact with Mrs. Knowles. Concerned, and unable to verify that the body shipped to Alabama was, in fact, that of her husband, Mrs. Knowles secured a court order and had the body exhumed. After personally viewing the body, Mrs. Knowles identified it as that of Mr. Knowles. In addition to a positive identification of the body, the exhumation revealed that the body had been buried nude, packed in cotton in a "disaster pouch." Mrs. Knowles stated in her affidavit that Mr. Knowles's body was lying in an awkward position and was terribly discolored. She described the body as looking like that of a "monster."
The record indicates that none of the individual defendants has ever had any contact with this state in their individual capacities.[2] Likewise, neither of the corporate defendants has had any contacts with Alabama, other than those previously discussed.[3]
In Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 461
(Ala. 1986), this Court stated:
 "It has long been established that physical presence in the state is not a prerequisite to effective service of process on a nonresident defendant; Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); see also Shrout v. Thorsen, 470 So.2d 1222 (Ala. 1985). What is required is that the out-of-state resident have 'some minimum contacts with this state [so that], under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action.' Rule 4.2(a)(2)(I), Ala.R.Civ.P.
 " ' "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " ' McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Alabama's long-arm statute (Rule 4.2, Ala.R.Civ.P.) has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala. 1977), Duke v. Young, 496 So.2d 37
(Ala. 1986). *Page 566 
 "Alabama's long-arm procedure for service of process is not limited to 'rigid transactional categories' or subject to a mechanical formula. Alabama Waterproofing Co. v. Hanby, 431 So.2d 141
(Ala. 1983). Instead, the relevant facts and attendant circumstances must be examined and the relationship among the defendant, the forum, and the litigation analyzed to determine if the defendant has sufficient 'minimum contacts' so that 'the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' International Shoe Co. v. Washington."
A relevant factor in a due process analysis is whether the defendant should have reasonably anticipated that he would be sued in the forum state. In Dillon Equities, supra, at 462, this Court, quoting World-Wide Volkswagen Corp. v. Woodson,444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), noted:
 " 'The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.' (Citations omitted.) In determining if an out-of-state defendant should have 'reasonably anticipate[d]' litigation in the forum state, the United States Supreme Court has frequently drawn from the reasoning of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):
 " ' "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." ' "
Other relevant factors include the burden placed on the defendant; the interest of the forum state in adjudicating the dispute; the plaintiffs' interest in obtaining convenient and effective relief; and the interstate judicial system's interest in obtaining the most efficient resolution of the controversy.World-Wide Volkswagen Corp., supra, 444 U.S. at 292,100 S.Ct. at 564-65; see, also, Dillon Equities, supra.
Rule 4.2(a), A.R.Civ.P., provides, in pertinent part, as follows:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
 "(B) contracting to supply services or goods in this state;
". . . .
 (I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
After carefully examining the particular facts and attendant circumstances of this case, we conclude that the trial court did not err in dismissing Cole, Damon, and Drs. Hunter, Leggs, Modglin, and Koo for lack of in personam jurisdiction. The record does not show that Cole ever had any contacts with this State, either in connection with Mr. Knowles's death or otherwise. Likewise, it does not appear that Damon, or any of the defendant doctors, ever had any contacts with Alabama, with the exception of mailing the autopsy report to Mrs. Knowles in Baldwin County. In our view, however, based on the evidence in this case, these defendants could not have reasonably anticipated that Mr. Knowles's body would make its way to *Page 567 
Alabama and that it would not be positively identified by anyone before burial and that, thereafter, they would be haled into an Alabama court to defend against a suit based on injuries allegedly caused by a misdescription contained in the autopsy report that was prepared at the request of the coroner in Imperial County, California. Such a contact with this State is simply insufficient to render it "fair and reasonable" to require these defendants to come here and defend against this action.[4]
We are of the opinion, however, that Hems Brothers had established significant contacts with this state by agreeing to prepare and to ship Mr. Knowles's body to the family here. We note that this preparation included the embalming of the body. In addition, Hems Brothers sold Mrs. Knowles a casket, in which the body was shipped and later solicited payment by mail in Alabama. Although the record does not show that Hems Brothers had ever done business with anyone else in this state, it is apparent that Hems Brothers purposefully availed itself of the privilege of conducting business in Alabama in this instance. In doing so, Hems Brothers should have reasonably anticipated being summoned to an Alabama court to answer any charges of misconduct in connection with the handling and shipment of Mr. Knowles's body. This is especially true given the sensitive nature of the mortuary business. Furthermore, given the progress in communications and transportation that has been made in recent years in this country, we cannot say that it would be unduly burdensome for Hems Brothers to defend against the present suit in an Alabama court. Hems Brothers, by its contacts with Alabama, not only invoked the protections and benefits of Alabama's laws, which it could have taken advantage of had it found it necessary to enforce its right to payment for services rendered and goods sold, but it also subjected itself to the jurisdiction of an Alabama court to resolve the conflicts that arose out of its business dealings with the plaintiffs.
Considering the nature of Hems Brothers' activity, the resultant foreseeability of its being required to defend an action in Alabama, the obvious interest of the plaintiffs in obtaining convenient and effective relief, and the relative lack of inconvenience that would be incurred by Hems Brothers in appearing and defending against the action in an Alabama court, World-Wide Volkswagen Corp., supra; Dillon Equities, supra, we are convinced that it is "fair and reasonable" to require it to defend against this action in Alabama.
For the foregoing reasons, we hold that Cole, Damon, and Drs. Hunter, Leggs, Modglin, and Koo did not have sufficient contacts with Alabama to permit the assertion of this state's jurisdiction over them. Accordingly, the judgments of dismissal as to those defendants are due to be, and they are hereby, affirmed. On the other hand, Hems Brothers did have the contacts necessary to permit the assertion of this state's jurisdiction over it. Therefore, the trial court's order denying its motion to dismiss is also affirmed.
88-1025 AFFIRMED.
88-1069 AFFIRMED.
88-1158 AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Several others, including Norris Funeral Home, Inc., of Bay Minette, Alabama, which was retained locally to handle Mr. Knowles's funeral, were also named as defendants in the suit. Those defendants, however, are not involved in these appeals.
[2] Cole was sued in his individual capacity and in his official capacity as a deputy coroner. He stated in his affidavit that he had not had any contact with Alabama, either individually or in connection with his official duties as a deputy coroner. Although the record contains a copy of the death certificate that was signed by Cole, and an "Autopsy Memo" from the coroner's office, there is nothing in the record indicating that Cole forwarded these documents to Alabama or that he even had the authority to do so. We also note that although Mrs. Knowles stated in her affidavit that the coroner's "office" in Imperial County had been in contact with various individuals in Alabama, there is no indication that Cole himself was ever directly in contact with anyone in Alabama.
It should also be noted that even though Drs. Hunter, Leggs, Modglin, and Koo all deny that a copy of the autopsy report was ever mailed to Mrs. Knowles, for purposes of this appeal we will assume that it was.
[3] Once again it should be noted that although Damon denied sending a copy of the autopsy report to Mrs. Knowles, we will assume that it did.
[4] Although they do not form the basis of our decision, we note that serious questions were raised by the defendant doctors as to whether they were properly served with the complaint.