This petition for writ of mandamus raises a question ofin personam jurisdiction over a Georgia automobile dealership, Pope *Page 110 
Chevrolet, Inc. Emmie Wallace, an Alabama resident who bought a pick-up truck from Pope Chevrolet at its premises in Stone Mountain, Georgia, brought an action against Pope Chevrolet in the Circuit Court of Calhoun County, Alabama, alleging fraud and breach of contract. The circuit court denied Pope Chevrolet's motion to dismiss, and Pope Chevrolet filed this petition for a writ of mandamus ordering the circuit court to dismiss the action.
Wallace stated in her affidavit in opposition to the motion to dismiss that she had received television and newspaper advertisements at her home in Alabama in which Pope Chevrolet offered to sell motor vehicles "at a very low and favorable rate to buyers." She stated further that Pope Chevrolet knew that she would use the vehicle she was buying "primarily near her home in Alabama," and that Pope Chevrolet made a copy of her Alabama driver's license. Pope Chevrolet responded by saying that it aimed its advertising at the Atlanta market, placing ads in the Atlanta and Gwinnett County, Georgia, newspapers and with Atlanta television stations. Pope Chevrolet also stated that less than one-tenth of one per cent of its sales were to Alabama residents.
Rule 4.2(a)(1), Ala.R.Civ.P., provides that "Appropriate basis exists for service of process outside of this state upon a person in any action in this state when . . . the person has sufficient contacts with this state, as set forth in subdivision (a)(2) of this rule, so that the prosecution of the action against the person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." Rule 4.2(a)(2), in provisions (A) through (H), lists specific activities that constitute sufficient contacts, and, in provision (I), it adds that a person has sufficient contacts by "otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action."
These provisions have been held to make the "long-arm" jurisdiction of this state "as broad as the permissible limits of due process." Alabama Power Co. v. VSL Corp., 448 So.2d 327
(Ala. 1984). In International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Court held:
 "[D]ue process requires only that in order to subject a defendant to jurisdiction in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "
Quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339,342-43, 85 L.Ed. 278 (1940).
Recent cases have reiterated and refined theInternational Shoe "minimum contacts" test. In World-WideVolkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559,62 L.Ed.2d 490 (1980), the Court held that two corporations, a New York retailer of Audi and Volkswagen automobiles and a distributor of such vehicles for New York, New Jersey, and Connecticut, could not be subjected to suit in Oklahoma based on damage suffered there in a collision involving a car sold by the defendant retailer to New York residents who, in the course of moving to Arizona, suffered the accident in Oklahoma. The Court relied on the following circumstances in finding a lack of the minimum contacts necessary for Oklahoma to exercise jurisdiction over those defendants:
 "Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market."
Id., at 295, 100 S.Ct. at 566.
The Court has articulated what may be called the "purposeful availment" and "stream of commerce" tests in applying the *Page 111 
minimum contacts rule. An example of both tests may be seen in the following passage from World-Wide Volkswagen, supra:
 "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' Hanson v. Denckla, 357 U.S. [235 (1958)], at 253, [78 S.Ct. 1228, at 1239-40, 2 L.Ed.2d 1283], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Cf. Gray v. American Radiator Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).
 "But there is no such or similar basis for Oklahoma jurisdiction over World-Wide or Seaway in this case. Seaway's sales are made in Massena, N.Y. World-Wide's market, although substantially larger, is limited to dealers in New York, New Jersey, and Connecticut. There is no evidence of record that any automobiles distributed by World-Wide are sold to retail customers outside this tristate area. It is foreseeable that the purchasers of automobiles sold by World-Wide and Seaway may take them to Oklahoma. But the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' Hanson v. Denckla, supra, at 253 [78 S.Ct. at 1239-40]."
Id., 444 U.S. at 297-98, 100 S.Ct. at 567.
The Court relied extensively on the "purposeful availment" test in Burger King Corp. v. Rudzewicz, 471 U.S. 462,105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), holding that a Michigan franchisee who negotiated and contracted with a Florida corporation for a long-term franchise that "envisioned continuing and wide-reaching contacts with Burger King in Florida," id., at 479-80, 105 S.Ct. at 2185-86, could constitutionally be subjected to the jurisdiction of the Florida courts. The following quotations exemplify the analysis:
 "[W]here individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."
Id., at 473-74, 105 S.Ct. at 2183 (citation omitted).
 "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from action by the defendant himself that create a 'substantial connection' with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."
Id., at 475-76, 105 S.Ct. at 2183-84 (citations omitted; emphasis in original). *Page 112 
 "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."
Id., at 476, 105 S.Ct. at 2184 (citations omitted).
The Court in Asahi Metal Industry Co. v. Superior Court ofCalifornia, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), held unanimously that it would not meet the "fundamental fairness and substantial justice" prong of the InternationalShoe test[1] to subject a Japanese manufacturer of valves to the jurisdiction of the California courts when the only claim remaining in the action was a third-party claim filed by the defendant Taiwanese tube manufacturer against Asahi, the manufacturer of the valve installed in the motorcycle tire tube that allegedly caused the plaintiff's injuries. The Court split on the question of minimum contacts, however; although Justice O'Connor, in writing the lead opinion, expressed the conclusion that minimum contacts did not exist, it appears that five of the Justices concluded, or would have concluded had they reached the issue, that minimum contacts did exist. See opinion of Justice Brennan, concurring in part and in the judgment, and opinion of Justice Stevens, concurring in part and concurring in the judgment.
All three opinions in Asahi rely largely on the "stream of commerce" test and also rely on the "purposeful availment" test. Justice O'Connor, with the concurrences of Chief Justice Rehnquist and Justices Powell and Scalia, said:
 "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."
480 U.S. at 112, 107 S.Ct. at 1033.
Justice Brennan, with the concurrences of Justices White, Marshall, and Blackmun, said:
 "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State. Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct."
480 U.S. at 117, 107 S.Ct. at 1035-36 (footnote omitted).
Justice Stevens, with the concurrences of Justices White and Blackmun, said:
 "Whether or not this conduct rises to the level of purposeful availment requires a constitutional determination that is affected *Page 113 
by the volume, the value, and the hazardous character of the components."
480 U.S. at 122, 107 S.Ct. at 1038.
Helicopteros Nacionales de Colombia, S.A. v. Hall,466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), another long-arm jurisdiction case, preceded Burger King and Asahi but came after World-Wide Volkswagen. Helicopteros added little to the analysis of long-arm jurisdiction that is pertinent to this case, however, principally because the parties conceded that the action did not arise out of the defendant's alleged contacts with the forum state and thus presented the question of whether Texas could constitutionally exercise general jurisdiction over the Colombian defendant. We note that the Court held that the defendant's acceptance of a check drawn on a Texas bank was "of negligible significance for purposes of determining whether Helicol had sufficient contacts in Texas."466 U.S. at 416, 104 S.Ct. at 1873. The Court reasoned:
 "[T]he bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."
This "unilateral activity" test was quoted in Burger King,471 U.S. at 475, 105 S.Ct. at 2183-84, and similar language was used in Asahi, 480 U.S. at 109-10, 107 S.Ct. at 1031-32
(opinion of O'Connor, J.). See also Kulko v. CaliforniaSuperior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132
(1978), and Hanson v. Denckla, 357 U.S. 235, at 253,78 S.Ct. 1228, at 1239-40 (1958). It may be said to be the converse of the "purposeful availment" test.
The Court has continued to use the International Shoe
"minimum contacts" test, but perhaps with a shade of difference: "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King, supra, 471 U.S. at 474,105 S.Ct. at 2183 (emphasis added); Asahi, 480 U.S. at 108-09,107 S.Ct. at 1031 (opinion of O'Connor, J.). Cf. World-WideVolkswagen, supra, 444 U.S. at 291, 100 S.Ct, at 564: "[A] state court may exercise jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State."
We have set out the above recapitulation of recent Supreme Court analysis of long-arm jurisdiction because the case before us presents such a close question on this issue. Can an automobile dealer be said to have purposefully availed itself of the benefits and protections of the laws of another state simply by selling a vehicle to one whom the dealer knows to be a resident of another state? Is the fact that defendant's advertising reached the plaintiff significant, even if the defendant did not aim its advertising at Alabama residents? Although this is not a classic "stream of commerce" case — such cases usually involve defendants who manufacture products, especially component parts such as that involved inAsahi[2] — the analysis found in all three Asahi opinions could be applied to the facts of this case. Taking, for example, Justice Stevens's criteria, does the volume, the value, or the "hazardous character" (or lack thereof) of the sales of automobiles work for or against the trial court's assertion of jurisdiction?
Pope Chevrolet stated in answers to interrogatories "that it sells 300 to 400 new cars per month, in addition to a number of used vehicles. It is estimated that no more than one-tenth of one per cent of total sales [are] to residents of the State of Alabama." Pope Chevrolet points to this small percentage, but Wallace estimates from Pope Chevrolet's figures that Pope Chevrolet sells eight or nine cars per year to Alabama residents, and that the income from those sales must exceed $100,000.
After reviewing the record, we conclude that Wallace has shown that Pope Chevrolet has established at least the minimum contacts with Alabama necessary to subject it to the jurisdiction of the courts of this *Page 114 
State. Pope Chevrolet is a large-volume dealership that does some of its business with residents of neighboring states, including Alabama. It advertises in a regional newspaper, theAtlanta Constitution, and with Atlanta television station WTBS, whose programming is broadcast in other states. Thus, it can reasonably be said to be soliciting sales from beyond the borders of Georgia. See Garrett v. Key Ford, Inc.,403 So.2d 923 (Ala.Civ.App. 1981). Subjecting Pope Chevrolet to jurisdiction in Calhoun County, Alabama, does not violate "fundamental fairness," because the Calhoun County courthouse is only approximately 100 miles from Pope Chevrolet's place of business, and almost the entire distance can be traveled on interstate highways.
For the foregoing reasons, Wallace has shown that Pope Chevrolet has at least the minimum contacts with this State necessary to subject it to in personam jurisdiction in this action. See Knowles v. Modglin, 553 So.2d 563 (Ala. 1989). Therefore, the trial court did not err in denying Pope Chevrolet's motion to dismiss the action, and the petition for writ of mandamus is due to be denied.
WRIT DENIED.
HORNSBY, C.J., and MADDOX, JONES, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
[1] The Justices in Asahi agreed that this prong arises only after
the minimum contacts test has been met and, in rare cases, serves to defeat jurisdiction even where sufficient contacts otherwise exist.
[2] See, also, Alabama Power Co. v. VSL Corp., 448 So.2d 327 (Ala. 1984), which applies a test that is equivalent to the "stream of commerce" test.