853 So.2d 888 (2002)
WENGER TREE SERVICE
v.
ROYAL TRUCK & EQUIPMENT, INC.
1011373.
Supreme Court of Alabama.
December 20, 2002.
*889 Stuart E. Smith, Huntsville, for appellant.
Jackson E. Duncan III, Huntsville, for appellee.
JOHNSTONE, Justice.

Introduction
The only issue presented in this appeal is whether the trial court erred in granting *890 the motion of the defendant Royal Truck & Equipment, Inc., to dismiss the civil action of the plaintiff Wenger Tree Service on the ground of lack of personal jurisdiction over the defendant. We reverse and remand.

State of the case
In the Madison County Circuit Court, Wenger Tree Service, an Alabama sole proprietorship engaged in the business of tree removal, sued the defendant Royal Truck & Equipment, Inc. ("Royal"), a Pennsylvania corporation engaged in the business of acquiring, refurbishing, and selling specialized trucks used by landscapes and arborists. Wenger sought specific performance of Royal's alleged contractual obligation "to deliver properly endorsed legal title to" a specialized truck bought and received by Wenger from Royal. Wenger also sought judgment for title to the truck pursuant to Rule 70, Ala. R. Civ. P. Wenger complained that, although it had fully performed the conditions of the contract, Royal had failed to deliver title to the truck.
Pursuant to Rule 12(b)(2), Ala. R. Civ. P., Royal moved to dismiss Wenger's action for lack of personal jurisdiction. In support of the motion to dismiss, Royal submitted a brief and three affidavits, one by the president of Royal, Robert Roy; a second by the sales manager of Royal, Steven Haman; and a third by an attorney for Royal, John Roberts. In opposition to the motion to dismiss, Wenger submitted a brief and two affidavits, one by the sole owner of Wenger, Marc Wenger, and a second by a Madison County resident who had communicated with Royal through E-mail, one Patricia Huber. The respective parties submitted exhibits as well. After a hearing, the trial court granted Royal's motion to dismiss.

Facts
Wenger's complaint, which is verified under oath, alleges:
"4. Royal has done business by agent in Madison County, Alabama.
"5. Wenger invokes personal jurisdiction over Royal pursuant to Rule 4.2, Ala. R. Civ. P.
"6. Wenger is engaged as a tree surgeon, and uses heavy trucks and other equipment in the course of its business.
"7. Wenger and Royal were parties to a previous sale transaction whereby Wenger purchased a 1984 International knuckle boom truck from Royal, which was delivered by Royal to Wenger in Madison County.
"8. In November of 2001, the parties negotiated a sale of a 1991 International 4900 truck (VIN 1HTSDZ27N9MH321953) with Wenger trading the 1984 International previously bought from Royal back to Royal as partial consideration for the purchase of the new truck. See attached `Sales Invoice.' (Exhibit A) Wenger paid a deposit of $5,000 prior to Royal commencing work to customize the purchase vehicle.
"9. Wenger also paid Royal the additional sum of $14,503.13 to complete the agreed purchase price for the 1991 truck.
"10. Wenger forwarded photographs of the 1984 trade vehicle to depict the condition of the vehicle, which is now 18 years old.
"11. On or about November 14, 2001, Wenger signed both the Sales Invoice and a second, untitled document relating to the trade vehicle. (Exhibit B)
*891 "12. On or about November 24, 2001, Royal delivered the 1991 purchase vehicle to Wenger in Madison County. Wenger tendered the trade vehicle to the firm retained by Royal and signed over title to the trade vehicle in favor of Royal. See `Delivery Receipt." (Exhibit C)
"13. As of November 24, 2001, Wenger's performance was complete.
"14. The delivery service took possession of the trade vehicle and shortly thereafter delivered the trade vehicle to Royal in Coopersburg, Pennsylvania. An authorized representative of Royal, Steve Haman, thereafter signed the Sales Invoice and the untitled document attached as Exhibits A and B on behalf of Royal on December 3, 2001."
The exhibits establish further facts. Marc Wenger initiated transactions with Royal by telephone, both in 1998 and in 2001, after Wenger noticed an advertisement for specialized trucks for sale by Royal in Tree Care Industry, a national trade magazine distributed to Wenger in Madison County. In the transaction now at issue, Wenger received through the mail a sales invoice showing that, after a $5,000 down payment, Wenger would owe Royal $14,503.13 for the purchase of the 1991 truck. With the invoice, Wenger also received a letter contract stating the terms and conditions of his trade-in of the 1984 truck and his purchase of the 1991 truck. Wenger signed both documents on November 14, 2001. Wenger alleges under oath that he paid the full purchase price.
On November 24, 2001, J.T.G. Trucking, a Pennsylvania shipping company, delivered the refurbished 1991 truck to Wenger in Madison County. The delivery receipt shows "Royal Truck, Rt. 309, Coopersburg, PA," as the "shipper" of one "Truck Dumpbox Ser# 1HTSDZ27N9MH321953" and shows "Marc Wenger Tree Service, 105 Carot [sic] Drive, Harvest, AL 35749," as the consignee. The delivery receipt, which shows the shipment as prepaid, is signed by Marc Wenger. After delivering the 1991 truck to Wenger, J.T.G. Trucking then transported the 1984 trade-in truck back to Royal in Pennsylvania.
The affidavit of Royal President Roy reads:
"1. I am the President and sole owner of Royal Truck & Equipment, Inc., a closely held business corporation organized and existing under the Business Corporation Law of the Commonwealth of Pennsylvania, with a mailing address of 6910 Rt. 309, Coopersburg, Pennsylvania.
"2. The nature of the business of Royal Truck & Equipment, Inc., is the acquisition, refurbishing and conversion of used trucks for special application uses (not serviced by Original Equipment Manufacturers) such as specialized vehicles for landscaping and lawn care, and arborists.
"3. All refurbishing and conversion work is done at our business facility located in Coopersburg, Pennsylvania except for some specialty work, such as painting, which is outsourced to nearby specialty facilities.
"4. The Corporation [Royal] is not registered to do business in the State of Alabama and pays no taxes in the State of Alabama.
"5. To the best of my recollection, the Corporation has not sold any of its products to any other resident of Alabama other than the Plaintiff.
*892 "6. The Corporation has never purchased or sold any trucks or supplies or equipment to or from any state or local government agency in the State of Alabama.
"7. To the best of my knowledge, the Corporation does not purchase any supplies or products directly from Alabama manufacturers and if any product or equipment that we routinely use is manufactured in the State of Alabama I am unaware of it.
"8. The Corporation advertises in some publications in the local market (the Allentown/Bethlehem/Easton standard statistical metropolitan area) and in some regional and national trade publications but has never placed any advertising in the State of Alabama or any publication originating in or (to our knowledge) published in the State of Alabama.
"9. The vast majority of the Corporation's business is conducted with customers from the tri-state area (Pennsylvania, New Jersey and New York) with substantially fewer customers coming from other states in the northeast region of the United States.
"10. The Corporation does advertise its products in national trade publications and it is my understanding from conversations with the Corporation's Sales Manager, Mr. Stephen Haman, that an advertisement in a national trade publication is how the Plaintiff first became aware of our products and location in 1998.
"11. The Corporation does not advertise in any newspapers other than those published in the LeHigh Valley in Pennsylvania and the Corporation does not solicit business via telephone calls or any kind of telephone bank nor does the Corporation do direct mail advertising. Accordingly, the Corporation does not and has not solicited business customers in the State of Alabama, directly or indirectly, except as might be incidental to advertisements in nationally circulated trade publications.
"12. It is my recollection that the first and only other time that the Plaintiff had dealings with the Corporation was in 1998 in response to one of our ads in a national trade publication when he contacted Mr. Haman by telephone and, after much discussion/negotiation, ordered from us a specialty truck which we manufactured for him. On that occasion, he arranged for payment for the vehicle in advance and, furthermore, he made his own arrangements with a local independent transport company, J.T.G. Transport (whose name we gave him), to transport the completed vehicle along with another vehicle he purchased from other entity in Connecticut from Pennsylvania to Alabama. That is, he placed a telephone call to our facilities in Coopersburg, Pennsylvania and ordered the specialty truck. The truck was manufactured entirely at our corporate facility in Coopersburg, Pennsylvania. The purchase price was paid in Pennsylvania in full before the vehicle left our premises and was delivered by us to a third party in Pennsylvania with whom the plaintiff had made pick-up and transportation arrangements so as to get the vehicles he purchased from us as well as the other vehicles *893 he purchased from some other entity from Pennsylvania to Alabama.
"13. Having once satisfactorily done business with us several years ago, the Plaintiff again called our offices in November of 2001 to purchase a newer and different specialty truck for his business. The pertinent details of that transaction are outlined in my three page letter to the Plaintiff dated December 3, 2001 and the attachments thereto which are appended to this affidavit at the end hereof."
The December 3, 2001, letter states that Roy had telephoned Marc Wenger to discuss the condition of the trade-in truck and at that time Wenger had made representations about the truck that were not true. Attached to the letter was a list of repairs and costs that Royal demanded Wenger pay.
The other affidavits submitted by Royal do not contain facts on the issue before us whether Royal had sufficient minimum contacts with Alabama, except that Royal's attorney for the past decade states in pertinent part in his affidavit: "I have never encountered or heard of any transaction which had any contact (in the legal sense) with the State of Alabama other than the transactions which are the subject of the instant suit in Madison County, Alabama."
Marc Wenger states in his affidavit:
"1. In 1998, I first learned of Royal Truck and Equipment, Inc., from an advertisement placed in Tree Care Industry magazine, which is delivered to me here in Madison County.
"2. In response to that advertisement, I called Royal and after some negotiations purchased a truck for use in my tree service business which has operated here in Madison County for several years. In the next several years, Royal sent a Christmas card to me and continued to advertise in publications delivered to me.
"3. In later 2001, I again saw a Royal advertisement of a newer and larger truck for sale by Royal in a trade publication delivered to me in Madison County. See Exhibit A hereto.
"4. After several telephone calls from and to Royal, I agreed to trade the first vehicle for the second, and to pay Royal additional money.
"5. I delivered the trade vehicle to a carrier sent by Royal into Madison County, paid the additional money, and signed title to the first truck back to Royal.
"6. I accepted delivery of the newer 1991 vehicle here in Madison County, and Royal delivered temporary tag to me here. See Exhibit B hereto.
"7. Royal has failed to endorse title to the second vehicle to me.
"8. I am unable to obtain the required registration and tag from the State of Alabama without the endorsed title from Royal.
"9. After the contract was consummated here in Madison County and Royal's delivery truck had returned to Pennsylvania, I received telephone calls from Royal at my home in Madison County complaining about the condition of the trade vehicle.
"10. I know from personal knowledge and Royal publications (including website) that Royal has done business with other residents of Alabama *894 and states located all over the Continental United States. See Exhibit A hereto (testimonial by Colorado resident)."
The affidavit of Patricia Huber, another Madison County resident, states:
"On March 1, 2002, I corresponded via electronic mail with Royal Truck and Equipment in Pennsylvania through Royal's Internet site `royaltruckequipment.com.' I obtained the web address from a print advertisement placed by Royal in Tree Care Industry Magazine here in Huntsville.
"My text message to Steve Haman, slsmgr@royaltruckequipment.com' is in the e-mail hard copy attached hereto as Exhibit A. I inquired as to whether Royal has a sales representative for Huntsville, Alabama. Mr. Haman responded to my e-mail that Royal does not have road salespeople in my area, but that he would be `more than happy' to send me information about Royal's products and services."

Law and Analysis
"In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and `where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.' Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)). `For purposes of this appeal [on the issue of in personam jurisdiction] the facts as alleged by the... plaintiff will be considered in a light most favorable to him [or her].' Duke v. Young, 496 So.2d 37, 38 (Ala. 1986)."
Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001). "An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction." Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002).
Rule 4.2(a), Ala. R. Civ. P., prescribes the contacts with this State that supply the bases for personal jurisdiction over a nonresident. Rule 4.2(a) provides, in pertinent part:
"(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
"(B) contracting to supply services or goods in this state;
"....
"(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
"Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of Alabama courts to the limit of due process under the federal and state constitutions. Sieber [v. Campbell, 810 So.2d 641 (Ala.2001) ]. See also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct.

*895 559, 62 L.Ed.2d 490 (1980); Duke [v. Young, 496 So.2d 37 (Ala.1986) ]; Brooks v. Inlow, 453 So.2d 349 (Ala.1984); and Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 144-146 (Ala. 1983). `A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' Sieber, 810 So.2d at 644. See also Sudduth [v. Howard], 646 So.2d [664,] 667 [(Ala.1994)].
"`"`What is required is that the out-of-state resident have "some minimum contacts with this state [so that], under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action." Rule 4.2(a)(2)(I), Ala. R. Civ. P. [ (Emphasis added.) ]
"`"`"`[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"' McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Alabama's long-arm statute (Rule 4.2, Ala. R. Civ. P.) has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala.1977); Duke v. Young, 496 So.2d 37 (Ala.1986). "`"`Alabama's long-arm procedure for service of process is not limited to "rigid transactional categories" or subject to a mechanical formula. Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala.1983). Instead, the relevant facts and attendant circumstances must be examined and the relationship among the defendant, the forum, and the litigation analyzed to determine if the defendant has sufficient "minimum contacts" so that "the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington.'" [(Emphasis added.) ]
"`"A relevant factor in a due process analysis is whether the defendant should have reasonably anticipated that he would be sued in the forum state. [(Emphasis added.) ] In Dillon Equities[ v. Palmer & Cay, Inc., 501 So.2d 459, 462 (Ala.1986) ], this Court, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), noted:
"`"`"The foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." (Citations omitted.) [ (Emphasis added.)]'"'
"Sudduth, 646 So.2d at 667 (quoting Knowles v. Modglin, 553 So.2d 563, 565-66 (Ala.1989))."
Ex parte McInnis, 820 So.2d at 802-03.
"Jurisdiction ... may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. *896 So long as a commercial actor's efforts are `purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis on "physically" in original; other emphasis added; citations omitted).
"`Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both `continuous and systematic' Specific contacts, which give rise to specific jurisdiction, consist of the defendant's contacts with the forum state that are related to the cause of action. Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state.'" Elliott v. Van Kleef, 830 So.2d at 730 (quoting Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result) (citations omitted)).
In four cases substantially similar to case now before us, Knowles v. Modglin, 553 So.2d 563 (Ala.1989), Ex parte Pope Chevrolet, Inc., 555 So.2d 109 (Ala. 1989), Atlanta Auto Auction, Inc. v. G & G Auto Sales, Inc., 512 So.2d 1334 (Ala.1987), and Garrett v. Key Ford, Inc., 403 So.2d 923 (Ala.Civ.App.1981), Alabama appellate courts held that nonresident defendant companies which had sold goods directly to Alabama plaintiffs had sufficient minimum contacts with Alabama to justify personal jurisdiction in our courts. While each of
the four differs in some respect from the case before us, the four together bespeak the importance of a direct sale by a nonresident seller to an Alabama plaintiff as a contact by the nonresident with the state of Alabama. These four seem to be all of the Alabama appellate decisions addressing the issue of whether our courts can exercise personal jurisdiction over a nonresident who or which has sold a product directly to an Alabama plaintiff.
In the first case, Knowles, supra, the Alabama resident plaintiffs husband died in California. Through an Alabama funeral home, the plaintiff contracted with the defendant California domiciliary funeral home for it to prepare the husband's body for burial, to supply a casket, and to ship the body in the casket to Alabama. After the defendant did so, the plaintiff, on contract and tort theories, filed suit in Alabama against the defendant for failing to prepare the body properly. Knowles does not suggest that the Alabama funeral home was the agent of the California defendant. The only contacts of the California defendant with Alabama were the one-time preparation of the body, sale of the casket, and shipment of body and casket, and the communications and billings entailed by this one contract. Yet this Court held that Alabama could exercise personal jurisdiction over the California defendant:
"[The defendant] ha[s] established significant contacts with this state by agreeing to prepare and to ship Mr. Knowles's body to the family here. We note that this preparation included the embalming of the body. In addition, [the defendant] sold Mrs. Knowles a casket, in which the body was shipped and later solicited payment by mail in Alabama. Although the record does not show that [the defendant] had ever done business with anyone else in this state, it is apparent that [the defendant] purposefully *897 availed itself of the privilege of conducting business in Alabama in this instance. In doing so, [the defendant] should have reasonably anticipated being summoned to an Alabama court to answer any charges of misconduct in connection with the handling and shipment of Mr. Knowles's body. This is especially true given the sensitive nature of the mortuary business. Furthermore, given the progress in communications and transportation that has been made in recent years in this country, we cannot say that it would be unduly burdensome for [the defendant] to defend against the present suit in an Alabama court. [The defendant], by its contacts with Alabama, not only invoked the protections and benefits of Alabama's laws, which it could have taken advantage of had it found it necessary to enforce its right to payment for services rendered and goods sold, but it also subjected itself to the jurisdiction of an Alabama court to resolve the conflicts that arose out of its business dealings with the plaintiffs.
"Considering the nature of [the defendant's] activity, the resultant foreseeability of its being required to defend an action in Alabama, the obvious interest of the plaintiffs in obtaining convenient and effective relief, and the relative lack of inconvenience that would be incurred by [the defendant] in appearing and defending against the action in an Alabama court, World-Wide Volkswagen Corp., [444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ]; Dillon Equities [v. Palmer & Cay, Inc., 501 So.2d 459 (Ala.1986) ], we are convinced that it is `fair and reasonable' to require it to defend against this action in Alabama."
Knowles, 553 So.2d at 567 (emphasis added).
In the second case, Pope Chevrolet, supra, the Alabama resident plaintiff sued the defendant Georgia automobile dealer in Alabama for fraud and breach of contract in selling a truck to the plaintiff in Georgia. The defendant knew the plaintiff was an Alabama resident who would use the truck in Alabama. The defendant had advertised vehicles for sale through television advertisements and newspaper advertisements respectively broadcast by an Atlanta television station, which the plaintiff received, and printed in a regional newspaper, the Atlanta Constitution, which the plaintiff received. According to the defendant, its advertisements were directed to the Atlanta market and only one-tenth of one percent of its sales were made to Alabama residents. According to the plaintiff, the defendant's sales figures showed that the defendant sold eight or nine vehicles per year to Alabama residents, and those sales produced income in excess of $100,000 to the defendant. This Court found that this case presented these questions:
"Can an automobile dealer be said to have purposefully availed itself of the benefits and protections of the laws of another state simply by selling a vehicle to one whom the dealer knows to be a resident of another state? Is the fact that defendant's advertising reached the plaintiff significant, even if the defendant did not aim its advertising at Alabama residents?"
Pope Chevrolet, 555 So.2d at 113. Analyzing both the stream of commerce test and the minimum contacts test, this Court held:
"[W]e conclude that [the plaintiff] has shown that [the defendant] has established at least the minimum contacts with Alabama necessary to subject it to jurisdiction of the courts of this State. [The defendant] is a large-volume dealership *898 that does some of its business with residents of neighboring states, including Alabama. It advertises in a regional newspaper, the Atlanta Constitution, and with Atlanta television station WTBS, whose programming is broadcast in other states. Thus, [the defendant] can reasonably be said to be soliciting sales from beyond the borders of Georgia."
Pope Chevrolet, 555 So.2d at 114.
In the third case, Atlanta Auto Auction, supra, the plaintiff Alabama automobile seller, on theories of fraud and negligence, sued the defendant Georgia automobile auction company for selling him a car with mechanical problems. The plaintiff had purchased numerous automobiles from the defendant before the plaintiff's purchase of the bad car. The defendant knew that the plaintiff was an Alabama resident automobile seller. Over the years, the plaintiff had received through the mail brochures from the defendant offering special sales and announcing auctions to be held by the defendant in Georgia. The plaintiff also had received "other solicitations to buy and sell automobiles, through Atlanta Auction." 512 So.2d at 1335. As grounds for the defendant's motion to dismiss the plaintiff's action for lack of personal jurisdiction, the defendant asserted that "it is not qualified to do business in Alabama, that it does not have a personal representative in Alabama, and that it has never sent a representative to Alabama for any purpose." 512 So.2d at 1335. Applying the minimum contacts test, this Court held:
"It is uncontested that [the defendant] actively solicited [the plaintiff's] business and through the mail services advertised its sales to be held in Georgia. It is also uncontested that [the plaintiff] had purchased numerous automobiles from [the defendant] and transported them to Alabama to ultimately sell to his customers. Furthermore, at all such times, [the defendant] knew that both [the plaintiff] and the company he worked for had their principal places of business in Scottsboro, Alabama. Based on the foregoing facts, we find that [the defendant] engaged in a `continuous and systematic' course of conduct in Alabama, albeit through mail services, that will support a reasonable exercise of jurisdiction by the courts of Alabama.
"....
"[The defendant] `purposefully directed' its merchandising efforts toward the residents and businesses of another state. By so doing, [the defendant] `purposefully availed' itself of the privilege of making sales to, and profits from, Alabama residents through a continuous and systematic course of merchandising. For the privilege of conducting such activities, [the defendant] must bear the burden commensurate with the benefits received from its sales in Alabama."
Atlanta Auto Auction, 512 So.2d at 1335-36 (citations omitted).
In the fourth case, Garrett, supra, the Alabama resident plaintiff sued the defendant Florida automobile company in Alabama for fraud in misrepresenting the mileage on a truck the plaintiff had bought from the defendant in Florida. The plaintiff had bought three other vehicles from the defendant in the four years preceding the subject sale. The defendant knew the plaintiff was an Alabama resident who would use the truck in Alabama. The defendant had placed television advertisements inviting Alabamians to come to Florida and to buy and to sell with the defendant. The plaintiff had seen these advertisements. The plaintiff also had received from the defendant "numerous cards and letters directed both to his address and only to Box Holder to bring his *899 cars to [the defendant] for service or soliciting the purchase of vehicles from [the defendant]." 403 So.2d at 933-34. The defendant collected Alabama sales tax on the vehicles purchased by the plaintiff and forwarded the necessary papers to Alabama for the plaintiff to obtain title on his vehicles. Moving to dismiss the plaintiff's suit for lack of personal jurisdiction, the defendant asserted that it had sold the vehicle to the plaintiff in Florida, that no part of the transaction occurred in Alabama, and that the defendant did not do business in Alabama. Applying the minimum contacts test to hold that the defendant had sufficient minimum contacts with Alabama to justify personal jurisdiction in the Alabama courts, the Court of Civil Appeals said:
"It is perfectly legitimate, as well as being consistent with good business practice, for a local or regional seller of goods in its television advertisements to pointedly seek customers from a named city or locality in an adjoining state. When a seller so specifically advertises, when they also solicit purchasers of their product by especially addressed mail as well as that directed to box holders, when they sell a product to a nonresident neighbor with knowledge that it will be utilized in that person's state of residence, and when, as here, the product happens to be a motor vehicle upon which they prepare and obtain the proper title instruments from the purchaser's home state, the minimum contact requirements have been met. Under these circumstances, Key Ford could have reasonably anticipated being sued in Alabama for the alleged fraud or misrepresentation. The courts of either Florida or Alabama could conveniently, expeditiously and efficiently dispose of the controversy. It does not appear that any appreciable inconvenience would be suffered by either party by a trial of this case in either state. Neither forum is distant as to either party. Had the defendant been sued in Florida, that state's courts would have had jurisdiction, but the two states have concurrent jurisdiction, for it is not unreasonable to authorize the disposition of the case through Alabama's courts. It is no longer true that the issue is sometimes determined by whether the defendant is `doing business' in Alabama or whether his action `accrued' here. Now, the focus is not on the defendant's presence in Alabama, but upon whether, under these facts, it had such contact with Alabama as to make it reasonable to require [the defendant] to defend this civil action in Alabama. International Shoe Co. v. State of Washington, supra,"

Garrett, 403 So.2d at 925 (emphasis added; citations omitted).
Wenger argues initially that its action is quasi in rem and thus that "this Court need not find general in personam jurisdiction over a nonresident in order to grant [it] relief." However, even if the action be quasi in rem, in Shaffer v. Heitner, 433 U.S. 186, 207, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977), the United States Supreme Court held that the minimum contacts test of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), applies to in rem and quasi in rem actions. See Bearden v. Byerly, 494 So.2d 59 (Ala.1986). Wenger argues further that Royal has sufficient contacts with the State of Alabama to require Royal to come to Alabama and to defend against Wenger's action.
In the case before us, and in the words of Rule 4.2(a)(2), Royal "has sufficient contacts with the state [of Alabama] ... [because Royal] is or may be legally responsible as a consequence of [Royal's] [emphasis added]
*900 "(A) transacting any business in this state;
"(B) contracting to supply services or goods in this state...."
These contacts are grounds for the exercise of specific personal jurisdiction. See Van Kleef supra. Moreover, the particular circumstances of Royal's transaction fulfill the requirement of Rule 4.2(a)(2)(I) that "it is fair and reasonable to require [Royal] to come to this state to defend [Wenger's] action" and our case-law requirement that Royal "should reasonably anticipate being haled into court [in Alabama]," McInnis, 820 So.2d at 803, and Van Kleef, 830 So.2d at 726. While the case before us may lack the intensity or focus of the solicitations, and the volume of the sales, present in Pope Chevrolet, Atlanta Auto Auction, and Garrett, supra, and may lack the "sensitive nature of the mortuary business"the "nature of [the California defendant's] activity," present in Knowles, 553 So.2d at 567, the case before us has its own set of special circumstances which justify the exercise of personal jurisdiction by our courts:
1. Royal, on two separate occasions, sold trucks directly to Wenger;
2. Royal customized the trucks to meet Wenger's particular specifications;
3. Royal negotiated the details of the customization directly with Wenger;
4. Royal negotiated the price and terms of the sale directly with Wenger;
5. Royal negotiated the terms of Wenger's trade-in directly with Wenger; and
6. Royal shipped the trucks directly to Wenger.
Royal cannot be surprised at being "haled into court" in Alabama; "it is fair and reasonable to require [Royal] to come to this state to defend," Rule 4.2(a)(2)(I).

Conclusion
The contacts by Royal with the state of Alabama were sufficient to subject Royal to specific personal jurisdiction in the courts of Alabama. Accordingly, the judgment of the trial court dismissing Wenger's complaint for want of personal jurisdiction over Royal is due to be reversed and this cause remanded.
REVERSED AND REMANDED.
MOORE, C.J., and LYONS and WOODALL, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
Considered in the light most favorable to Wenger Tree Service, see Ex parte McInnis, 820 So.2d 795 (Ala.2001), Wenger's verified complaint and affidavits substantiate that Royal Truck & Equipment, Inc., engaged in actions purposefully directed toward Alabama, the forum state, so as to indicate an intent or purpose to serve a market in Alabama. Asahi Metal Indus. Co. v. Superior Court of California, Solano County, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); Sudduth v. Howard, 646 So.2d 664 (Ala.1994); Ex parte McInnis, supra. Jurisdiction of Royal under the long-arm statute comports with due process under the federal and state constitutions. U.S. Const., Amend. XIV; Art, I, § 6, Ala. Const.1901.