Helmut J. Sieber, a Canadian resident, and Canadian Agra International Corporation ("Canadian Agra"), a Canadian corporation, appeal from a judgment entered in favor of Jack L. Campbell as to claims arising out of the negotiation and performance of an employment contract. Sieber and Canadian Agra argue on appeal that the Madison Circuit Court erred by holding that they were subject to that court's personal jurisdiction under Rule 4.2, Ala.R.Civ.P., also known as this State's "long-arm statute." We disagree, and we affirm the trial court's judgment.
 Facts and Procedural History
Campbell was once employed by a company referred to in the record before us as the "Stressle-Straube Group" (hereinafter referred to as "Stressle-Straube"), a computer-software company principally owned by Christian H.W. Straube and based in Stuttgart, Germany. While at Stressle-Straube, Campbell became familiar with a software package described as a "geographic information system," or "GIS." Although Campbell left Stressle-Straube in 1993 to open a consulting business, his knowledge of Stressle-Straube's GIS package led to a continuing relationship with that company.
Stressle-Straube transferred ownership of its GIS package to Telemap Satellite Communications Corporation ("Telemap"), a company in which Stressle-Straube held an equitable interest as a beneficiary in a trust as to which Sieber served as the trustee. Sieber also served as a corporate officer for Telemap. Telemap was charged with developing a market for the GIS package in North America, but it needed someone to lead the effort. Mr. Stressle decided that Campbell was a good candidate for the job because of his knowledge of the North American GIS market, so in February 1994 he helped to arrange a meeting between Sieber and Campbell in Liechtenstein to discuss the matter. In March 1994, Campbell traveled to Toronto, Canada, to further discuss with Sieber his possible employment with Telemap. Human-resource consultants from a prominent public accounting firm evaluated Campbell's background and capabilities. After the evaluation, Campbell joined Sieber for dinner to discuss terms of employment. The discussions continued the next day, concluding in a meeting at the headquarters of H.J. Sieber Group and Canadian Agra, both of which were entities that Sieber at least partially owned. Campbell and Sieber agreed to a contract providing Campbell with employment for at least one year at a salary of $120,000 per year. The contract described Campbell's position as "Vice-President Marketing." Campbell alleges that he signed the written contract only after Sieber orally provided a personal guarantee of Campbell's salary.
During the contract negotiations, Sieber and Campbell discussed the location of Campbell's base of operations. They initially *Page 643 
agreed that Campbell would locate in Canada. After the execution of the contract, however, Campbell suggested that Huntsville, Alabama, was a better location because of the area's research facilities. Sieber agreed and arranged the payment of Campbell's moving expenses.
According to the evidence, Campbell was hired to obtain licensing under the North American Free Trade Agreement for the marketing and distribution of Telemap's GIS software package. His performance under the contract entailed the development of a marketing plan under Sieber's supervision as a Telemap officer. The record also suggests, however, that Campbell was expected to serve, directly or indirectly, Canadian Agra, which had an unspecified interest in the development of a market for the GIS, and, on at least one occasion, he served in that capacity. We find no evidence in the record as to the details of this arrangement with Canadian Agra.
According to Sieber's deposition testimony, Sieber and Stressle-Straub became displeased with Campbell's performance. With Stressle-Straube's approval, Sieber authorized what was the last payment to Campbell, in December 1996. At that time, Campbell's employment had not yet been terminated. On May 19, 1997, Campbell and Sieber discussed a new contract for 1998. That contract increased Campbell's compensation and provided for payments not made under the previous contract, which, at that time, totalled $130,397.00. Campbell subsequently continued his employment with Sieber through June 1997. At that time, he still had not received any payment on the accruing delinquency. Consequently, he notified Sieber that his employment contract had been breached and that he would no longer perform under the 1998 contract. At that time, the record suggests, Telemap owed Campbell $243,259.24, which reflected the sum of the balance previously owed and the 1998 total salary combined with expenses incurred during the term of the new 1998 contract, plus interest.
Campbell filed this lawsuit on September 26, 1997, naming as defendants Telemap, Sieber, Canadian Agra, and two of Sieber's business holdings, including Raika Financial Corporation ("Raika"). Campbell's complaint alleged breach of contract; fraudulent assertion of a corporate existence; misrepresentation; suppression; and promissory estoppel. All the defendants, except for Telemap, timely moved to dismiss for lack of personal jurisdiction. The trial court denied the motion and ordered that the case proceed. During the discovery phase, Campbell obtained an order compelling Sieber to appear for deposition. Sieber initially refused to be deposed, despite this order, and the trial court entered a judgment against Telemap as a sanction. Sieber later complied with the order. As the case proceeded to pretrial conference, all of the defendants except for Sieber and Canadian Agra were dismissed pursuant to an agreement by the parties. The trial court conducted a bench trial on April 17, 2000, in which it heard oral testimony from Campbell. Sieber elected not to testify at trial and instead relied on his deposition testimony and supporting exhibits as evidence. The trial court entered a judgment against Sieber and Canadian Agra totalling $243,259.24, which was the same judgment entered against Telemap. Sieber and Canadian Agra appealed.
 Discussion
The question raised in this appeal is whether the trial court properly exercised personal jurisdiction over Sieber and Canadian Agra, both of whom are nonresident defendants. The requirements for personal jurisdiction in this state *Page 644 
are set out in Rule 4.2(a)(2), Ala.R.Civ.P., which provides, in pertinent part:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(A) transacting any business in this state;
". . . .
 "(D) causing tortious injury or damage in this state by an act or omission outside of this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
". . . .
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
(Emphasis added.) Rule 4.2 extends the personal jurisdiction of Alabama courts to the limits of due process under the federal constitution and the Alabama constitution. Duke v. Young, 496 So.2d 37 (Ala. 1986); Brooksv. Inlow, 453 So.2d 349 (Ala. 1984); Alabama Waterproofing Co v. Hanby,431 So.2d 141, 144-146 (Ala. 1983); DeSotacho, Inc. v. Valnit Indus.,Inc., 350 So.2d 447 (Ala. 1977). See also World-Wide Volkswagen Corp. v.Woodson, 444 U.S. 286, 297 (1980). A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident. Sudduth v.Howard, 646 So.2d 664, 667 (Ala. 1994).
 "`A relevant factor in a due process analysis is whether the defendant should have reasonably anticipated that he would be sued in the forum state. In [Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 462 (Ala. 1986)], this Court, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), noted:
 "`"`The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. (Citations omitted.)'"'"
Sudduth, 646 So.2d at 667 (quoting Knowles v. Modglin, 553 So.2d 563,565-66 (Ala. 1989)) (emphasis added).
Campbell sued Sieber in Sieber's personal capacity as a officer of several of his corporate codefendants, alleging tort and contract claims. It appears from the record that Campbell's theory at trial was that many of Campbell's claims, especially those alleging fraudulent conduct, arose out of Sieber's own personal guarantee of Campbell's compensation. At trial, Campbell introduced substantial evidence to support this theory and his claim that his employment contract was breached. Campbell further proved at trial that Sieber, either as Campbell's employer or as the agent for Campbell's employer or as both employer and agent of the employer, personally located Campbell as the employee in Alabama and persistently dealt with Campbell while he was located as an employee in Alabama. That the location in Alabama was Campbell's idea is immaterial. Sieber himself located Campbell in Alabama to do the business of Sieber, Canadian Agra, or both, in Alabama. *Page 645 
A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort.Bethel v. Thorn, 757 So.2d 1154, 1158 (Ala. 1999), and Ex parte CharlesBell Pontiac-Buick-Cadillac-GMC, 496 So.2d 774, 775 (Ala. 1986). Likewise, corporate-agent status does not insulate the agent from the personal jurisdiction of a state court for the litigation of those torts, or any other claims pendent to that lawsuit. Calder v. Jones, 465 U.S. 783,790 (1984); accord Sudduth v. Howard, supra, 646 So.2d at 668. Substantial evidence in the case before us supports the conclusions apparently shared by the trial judge that "it is fair and reasonable to require [Sieber] to come to [Alabama] to defend [this] action" and that Sieber "should reasonably [have] anticipated being haled into court" to litigate Campbell's claims.
 Conclusion
The judgment of the circuit court is affirmed.
AFFIRMED.
Moore, C.J., and Houston, See, Lyons, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.