Affirmed and Majority and Dissenting Opinions filed December 7, 2006








Affirmed and Majority and Dissenting Opinions filed December
7, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00481-CV

____________

 

H. HELLER & CO., INC. AND GULF
PERFORMANCE POLYMERS, INC., Appellants

 

V.

 

LOUISIANA-PACIFIC CORP., Appellee

 



 

On Appeal from the 270th
District Court

Harris County, Texas

Trial Court Cause No. 2005-45951

 



 

M A J O R I T Y   O P I N I O N

Appellants, H. Heller & Co., Inc. and Gulf Performance
Polymers, Inc., appeal from the denial of their plea to the jurisdiction.  In
the court below, Louisiana-Pacific filed for enforcement of an Alabama judgment
against appellants.  On appeal, appellants contend that the trial court erred
in denying their plea to the jurisdiction because the Alabama court issuing the
original judgment did not have personal jurisdiction over them.  We affirm.








Background

Appellants manufacture high-density polyethylene, or HDPE,
a thermoplastic made from petroleum.  In 2000, LP purchased three shipments of
HDPE from appellants for use in the manufacture of an engineered-wood decking
material.  Each shipment was comprised of two rail-car loads sent from
appellants= facility in Channelview, Texas, to LP=s facility in
Selma, Alabama.

In its Alabama lawsuit, LP alleged that the third shipment
of HDPE from appellants failed to meet contract specifications.  LP further
alleged that the sub-standard quality of appellant=s product resulted
in a sub-standard batch of decking material, which had to be scrapped. 
According to LP, appellants subsequently declined to refund LP=s payment or
replace the deficient product.  LP pleaded causes of action for breach of
contract, breach of warranty, fraud/misrepresentation, conversion, and unjust
enrichment.  Appellants failed to answer in the Alabama lawsuit.  Consequently,
on May 11, 2004, the Alabama trial court entered a default judgment awarding LP
$199,494 in damages and interest.

In the court below, appellants acknowledged making the
sales to LP but contended that LP initiated the contact that resulted in the
sales and that neither of the appellants solicited business in Alabama or sent
personnel to Alabama related to the sales.  They further alleged that they did
not maintain offices in Alabama, did not have an agent for service of process
in Alabama, did not have salespeople in Alabama or make routine sales there,
did not advertise in Alabama, and did not have bank accounts or own property in
the state.  Appellants asserted that LP representatives traveled to Texas to
inspect the product and traveled to New York to discuss the sale, but at no
time did any representative of appellants travel to Alabama in conjunction with
the sale.   They further contended that pursuant to the terms of the shipment
contract, ownership and risk of loss of the HDPE transferred to LP when the
product was loaded on railcars in Channelview, Texas.








In an affidavit attached to LP=s response, Greg
Stogner, an LP manager, stated that appellants= initial contact
with the company was through a former LP employee who worked at its Selma,
Alabama facility.  Prior to sending the allegedly defective shipment,
appellants had sold and shipped at least four other railcars of HDPE to LP in
Selma.  The purchase order for each shipment stated that the product would be
shipped to Selma, Alabama.  Appellants selected and paid for the rail carrier
to deliver the product to Selma.  Furthermore, in negotiating the sale, LP
required that the HDPE have a certain nominal melt index, and appellants
certified that their product met this specification.

LP=s original enforcement action, filed in
the court below on July 19, 2005, appears to have been based on common law
principles of foreign judgment enforcement.  However, on December 6, 2005, LP
subsequently amended their pleadings pursuant to the Uniform Enforcement of Foreign
Judgments Act (UEFJA).  Tex. Civ. Prac.
& Rem. Code Ann. '' 35.001-.008 (Vernon 1997 & Supp.
2006).  Under the UEFJA, the very filing of a foreign judgment in a Texas court
constitutes both an original petition and a final judgment, automatically
creating a final Texas judgment.  Moncrief v. Harvey, 805 S.W.2d 20, 22
(Tex. App.CDallas 1991, no writ).  A challenge to the enforcement
of a foreign judgment operates as a motion for new trial.  Mindis Metals,
Inc. v. Oilfield Motor & Control, Inc., 132 S.W.3d 477, 485 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied).  As mentioned, appellants challenged enforcement of
the Alabama action by filing a plea to the jurisdiction, which the trial court
denied.

Legal Underpinnings








In their sole issue on appeal, appellants contend that the
trial court erred in denying their plea to the jurisdiction because the Alabama
court that issued the original judgment did not have personal jurisdiction over
them.  Under constitutional principles of federalism and comity, full faith and
credit must be given in each state to the public acts, records, and judicial
proceedings of every other state.  U.S.
Const. art. IV, ' 1; 28 U.S.C. ' 1738. 
Accordingly, Texas is required to enforce a valid judgment presented from
another state.  See Bard v. Charles R. Myers Ins. Agency, Inc., 839
S.W.2d 791, 794 (Tex. 1992).  The party seeking to enforce a foreign judgment
has the initial burden to present a judgment that appears on its face to be a
final, valid, and subsisting judgment.  Mindis Metals, 132 S.W.3d at
484.  When a judgment creditor files an authenticated copy of a foreign
judgment pursuant to the UEFJA, a prima facie case for its enforcement is
presented.  Mitchim v. Mitchim, 518 S.W.2d 362, 364 (Tex. 1975); Mindis
Metals, 132 S.W.3d at 484.  The burden then shifts to the judgment debtor
to prove by clear and convincing evidence that the foreign judgment should not
be given full faith and credit.  Mindis Metals, 132 S.W.3d at 484. 
Well-established exceptions to the requirement of full faith and credit include
when (1) the judgment sought to be enforced is interlocutory; (2) the judgment
is subject to modification; (3) the rendering court lacks personal or subject
matter jurisdiction; (4) the judgment was procured by extrinsic fraud; and (5)
the period for enforcing the foreign judgment has expired.  Id. at 485; see
also Brown v. Lanier Worldwide, Inc., 124 S.W.3d 883, 903 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  We look to the laws of the state rendering the judgment
to assess the judgment=s validity.  Mindis Metals, 132
S.W.3d at 484.








Similar to the Texas Long-arm Statute, the Alabama Long-arm
Statute extends the personal jurisdiction of Alabama courts to the limits of
due process under the federal and state constitutions.  Ala. R. Civ. P. 4.2(a)(2); Sieber v. Campbell, 810
So.2d 641, 644 (Ala. 2001); see also Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041-.045
(Vernon 1997 & Supp. 2006); BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002).  The exercise of personal jurisdiction over a
nonresident defendant is constitutional when two conditions are met:  (1) the
defendant has established minimum contacts with the forum state, and (2) the
exercise of jurisdiction comports with traditional notions of fair play and
substantial justice.  Int=l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945).  Personal jurisdiction exists if the
nonresident defendant=s minimum contacts give rise to either
general or specific jurisdiction.  Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 413‑414 (1984); BMC Software, 83 S.W.3d
at 795‑796.  General jurisdiction is present when the defendant=s contacts with a
forum are continuous and systematic so that the forum may exercise personal
jurisdiction over the defendant even if the cause of action did not arise from
or relate to activities conducted within the forum state.  BMC Software,
83 S.W.3d at 796.   Specific jurisdiction is established when the nonresident
defendant=s alleged liability arises from or is related to
activity conducted within the forum.  Id.  The Atouchstone@ of jurisdictional
due process analysis is Apurposeful availment.@  Michiana Easy
Livin= Country, Inc. v. Holten, 168 S.W.3d 777,
784 (Tex. 2005) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  A[I]t is essential
in each case that there be some act by which the defendant >purposefully
avails= itself of the
privilege of conducting activities within the forum State, thus invoking the
benefits and protections of its laws.@  Id. at
785 (quoting Hanson, 357 U.S. at 253).  There are three important
aspects to be considered in evaluating purposeful availment: (1) only the
defendant=s contacts with the forum count; a defendant cannot be
haled into a jurisdiction solely as a result of the unilateral activity of
another party or a third person; (2) the acts relied upon must be purposeful
rather than random, isolated, or fortuitous; and (3) a defendant must have
sought some benefit, advantage, or profit by availing itself of the
jurisdiction.  Id.  By invoking the benefit and protections of a forum=s laws, a
nonresident consents to suit there.  Id. (citing World‑Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  By contrast, a
nonresident may purposefully avoid a jurisdiction by structuring its
transactions so as neither to profit from the forum=s laws nor be
subject to its jurisdiction.  Id. (citing Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475 (1985)).

Even a single act can support jurisdiction if it creates a
substantial connection with the forum.  Burger King, 471 U.S. at 476
n.18.  However, some single or occasional acts related to the forum may be
insufficient to establish jurisdiction where their nature and quality create
only an attenuated affiliation with the forum.  Id.  Furthermore,
jurisdiction Amay not be avoided merely because the defendant did
not physically enter the forum State . . . ; [s]o long as a commercial actor=s efforts are >purposefully
directed= toward residents
of another State, [the Supreme Court has] consistently rejected the notion that
an absence of physical contacts can defeat personal jurisdiction there.@  Id. at
476.








In addition to minimum contacts, the exercise of personal
jurisdiction must comport with traditional notions of fair play and substantial
justice.  BMC Software, 83 S.W.3d at 795 (citing Int=l Shoe, 326 U.S. at
316).  The following factors are relevant to this determination:  (1) the
burden on the nonresident defendant, (2) the forum state=s interest in
adjudicating the dispute, (3) the plaintiff=s interest in
obtaining convenient and effective relief, (4) the interstate judicial system=s interest in
obtaining the most efficient resolution of controversies, and (5) the shared
interest of the several states in furthering substantive social policies.  World‑Wide
Volkswagen, 444 U.S. at 292.

Minimum Contacts[1]

Here, the appellants= alleged liability
arose from activity related to the forum.  Accordingly, we examine the record
for whether the Alabama court had specific personal jurisdiction over
appellants.  See BMC Software, 83 S.W.3d at 796.  We begin by
examining the limits of such jurisdiction as established in prior precedent.








In World‑Wide Volkswagen, the United States
Supreme Court considered whether an Oklahoma court could exercise personal
jurisdiction over a nonresident automobile retailer and its wholesale
distributor when the defendants= only connection with Oklahoma was the
fact that they sold an automobile in New York to New York residents that
subsequently became involved in an accident in Oklahoma.  444 U.S. at 287. 
Holding that Oklahoma could not constitutionally assert jurisdiction, the Court
explained that the mere fact that it was foreseeable that a automobile sold in
New York could cause injury in Oklahoma was an insufficient connection to the
forum state for the defendants to reasonably anticipate being haled into an
Oklahoma courthouse.  Id. at 295-97.  In Asahi Metal Industry v.
Superior Court, a plurality of the Court sought to clarify the holding in World-Wide
Volkswagen, stating that in order for a defendant to have a sufficient connection
with a forum to support jurisdiction, the defendant=s actions must be
more purposefully directed at the forum state than merely having placed a
product in the stream of commerce that finds its way to the forum state.  Asahi
Metal, 480 U.S.102, 110-12 (1987).[2] 
Here, the facts and circumstances of appellants= contacts with
Alabama are distinguishable from those in World-Wide Volkswagen, and,
indeed, such contacts were more purposefully directed toward the forum state
than merely placing them in the stream of commerce.  Appellants were contacted
by an LP employee stationed in Alabama, negotiated the sale, issued a purchase
order requiring shipment to Alabama, selected and paid the rail carrier for
shipment to Alabama, and certified that their product met the specifications
required by the purchaser in Alabama.  Certainly, appellants understood that
their product was to be used in Alabama, and appellants purposefully directed
conduct toward the forum by negotiating with someone in the forum and sending
product to the forum on at least three separate occasions.








In CMMC v. Salinas, the Texas Supreme Court
considered whether a state court could take jurisdiction over a foreign
manufacturer merely because it knew that its allegedly defective product would
be shipped into Texas.  929 S.W.3d 435, 436 (Tex. 1996).  Specifically, the
manufacturer in question was based in France and was instructed by an
independent New York distributor to arrange with a freight forwarder, selected
and paid for by the distributor, to ship the purchased equipment to Texas.  Id.
at 436-37.  The court held that mere knowledge that the equipment was to be
shipped to and used in Texas was not sufficient to subject the manufacturer to
the jurisdiction of Texas courts.  Id. at 439.  Again, the facts of the
present case are distinguishable:  appellants had direct contact with the
customer in Alabama, issued a purchase order requiring shipment to Alabama,
selected and paid the rail carrier for shipment to Alabama, and certified that
their product met the specifications required by the Alabama purchaser.

In Michiana, the Texas Supreme Court considered
whether the sale of an RV by an Indiana dealer to a Texas resident subjected
the dealer to personal jurisdiction in Texas.  168 S.W.3d at 781, 784.  In
holding that the dealer did not have the requisite minimum contacts for
jurisdiction to apply, the court emphasized that although the dealer knew the
vehicle was purchased for use in Texas, it was a single sale, the customer made
the initial contact, shipment to Texas was at the customer=s sole request and
expense, and the parties chose Indiana law to govern any disputes.  Id.
at 787-793.  Although in the present case, the LP employee apparently made the
initial contact with appellants, there were multiple sales, shipment to Texas
was arranged and paid for by appellants, and there apparently is no choice of
law provision.  Accordingly, the facts of the present case are distinguishable
from those in Michiana.








In Wenger Tree Service v. Royal Truck & Equipment,
Inc., the Alabama Supreme Court considered whether a Pennsylvania
refurbisher of specialty trucks was subject to jurisdiction in Alabama in
relation to a sale to an Alabama resident.  853 So.2d 888, 889-90 (Ala. 2002). 
In finding that the defendant could not be surprised at being haled into an
Alabama courthouse, the court emphasized that the defendant had sold trucks
directly to the Alabama customer on two separate occasions, negotiated the
terms directly with the Alabama purchaser, customized the trucks to meet the
Alabama purchaser=s specifications, and shipped the trucks
to Alabama.  Id. at 900.  The facts in the present case are
substantially similar to those in Wenger: appellants made multiple sales
to LP for use in its Alabama facility, appellants negotiated with an LP
employee based in Alabama, appellants certified that their product met LP=s specifications,
and appellants selected and paid the carrier for shipment to Alabama.

In summary, appellants directed conduct toward the forum
that was not merely random, isolated, or fortuitous, and appellants profited by
this conduct.  See Michiana, 168 S.W.3d at 785.  Appellants point to the
fact that pursuant to the terms of the shipment contract, ownership and risk of
loss of the HDPE transferred to LP when the product was loaded on railcars in
Texas.  However, the fact remains that appellants arranged and paid for
shipment to Alabama.  That risk of loss switched to LP before the product left
Texas does not change this analysis.  See Luv n= Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 471 (5th Cir. 2006) (AJurisdiction . . . >does not depend on the technicalities
of when title passes . . . ,=@ quoting Oswalt v. Scripto, Inc.,
616 F.2d 191, 197 n.8 (5th Cir. 1980)).[3]  Accordingly, we
find that appellants= conduct established minimum contacts with
Alabama in regards to their sale of HDPE to LP.[4]








Fair Play and Substantial Justice

AOnce it has been decided that a defendant
purposefully established minimum contacts within the forum State, these
contacts may be considered in light of other factors to determine whether the
assertion of personal jurisdiction would comport with >fair play and
substantial justice.=@  Burger King,
471 U.S. at 476.  The other relevant factors are frequently stated as follows: 
(1) the burden on the nonresident defendant, (2) the forum state=s interest in
adjudicating the dispute, (3) the plaintiff=s interest in
obtaining convenient and effective relief, (4) the interstate judicial system=s interest in
obtaining the most efficient resolution of controversies, and (5) the shared
interest of the several states in furthering substantive social policies.  World‑Wide
Volkswagen, 444 U.S. at 292.  When a defendant that has purposefully
directed activity at the forum state seeks to defeat jurisdiction, it Amust present a
compelling case that the presence of some other considerations would render
jurisdiction unreasonable.@  Burger King, 471 U.S. at 477.  A[J]urisdictional
rules may not be employed in such a way as to make litigation >so gravely
difficult and inconvenient= that a party unfairly is at a >severe
disadvantage= in comparison to his opponent.@  Id. at
478 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)).








Having found that appellants established minimum contacts
with Alabama, we turn now to the other factors relevant to fair play and
substantial justice.  Regarding the first additional factor, appellants assert
that subjecting them to suit in Alabama would place a substantial burden on
them in that they have never conducted business in Alabama and all of their
witnesses and documentation would be located in New York or Texas.  Although
appellants do not cite any evidence in support of this contention, in his
affidavits attached to the plea to the jurisdiction, Lloyd Heller (president of
both appellants) averred that neither company conducted Aroutine or regular
sales in Alabama.@  Based on this and other statements in
the affidavits, it is clear that appellants do not have a strong presence in
Alabama.  However, with offices in at least Texas and New York, it is apparent
that appellants do operate on a multi-state basis.  Thus, this factor weighs
only slightly against finding that jurisdiction in Alabama comports with
notions of fair play and substantial justice.  Regarding the second factor,
Alabama would certainly have an interest in adjudicating a dispute in which it
is alleged that an out-of-state manufacturer shipped substandard product to an
Alabama facility for manufacturing use in Alabama that caused injury in
Alabama.  See Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.,
163 S.W.3d 120, 132-33 (Tex. App.CSan Antonio 2005,
no pet.) (holding that Texas had a strong interest in adjudicating a dispute
arising from injury sustained in Texas); Ex Parte Hosp. Espanol de Auxilio
Mutuo de Puerto Rico, Inc., No. 1050685, 2006 WL 1451494, at *5 (Ala. May
26, 2006) (holding that Alabama has a strong interest in adjudicating lawsuits
regarding the safety of organs entering the state for transplantation).  Thus,
this factor weighs in favor of finding that jurisdiction over appellants is constitutional. 
Regarding the third factor, LP would presumably have an interest in litigating
in Alabama since its facility where the alleged problems occurred is in
Alabama; thus, its key witnesses and physical evidence would likely be situated
in Alabama.  See Salinas v. CMMC, 903 S.W.2d 138, 145 (Tex. App.CAustin 1995)
(stating that since injury giving rise to cause of action occurred in Texas, it
was likely that the great majority of evidence and witnesses could be found in
the state), rev=d on other grounds, 929 S.W.3d 435
(Tex. 1996); Ala. Power Co. v. VSL Corp., 448 So.2d 327, 329 (Ala. 1984)
(stating that Alabama would be the more convenient forum because the witnesses
were likely to be found there).  Consequently, this factor also leans toward
finding jurisdiction constitutional.  For the same reasons, it would behoove
the interstate judicial system for the litigation to occur in Alabama (as that
is where the alleged injuries occurred); thus, the fourth factor weighs toward
finding jurisdiction to be constitutional.  See E.I. DuPont De
Nemours & Co. v. Bailey, 986 S.W.2d 82, 85 (Tex. App.CBeaumont 1999,
pet. dism=d w.o.j.) (discussing premise that controversies are
most efficiently resolved where witnesses and evidence are likely to be
located); see also Ala. Power Co., 448 So.2d at 329.  Regarding the
fifth factor, appellants identify no substantive social policies that suggest
jurisdiction in Alabama would be improper, and none are evident on the record. 
Accordingly, this factor does not lean in either direction.

In conclusion, although it might have been inconvenient for
appellants to have litigated in Alabama, they have failed to demonstrate that
such inconvenience rose to the level of being Aso gravely
difficult@ that they would have been at a Asevere
disadvantage@ in comparison to LP.  See Burger King, 471
U.S. at 478.  Accordingly, we find that Alabama=s exercise of
jurisdiction over appellants did not violate traditional notions of fair play
and substantial justice.  We overrule appellants= sole issue.

We affirm the trial court=s order.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed December 7, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore. (Yates, J. dissenting).

 









[1]  As mentioned, we look to the laws of the state rendering the judgment to
assess the judgment=s validity.  Mindis Metals,
132 S.W.3d at 484.  This is certainly
true regarding issues of validity based on state substantive and procedural
law.  See id. at 486-90 (addressing issues of finality, modification,
and fraud under Georgia law).  However, when the issues of validity are based
on federal due process considerations, it is unclear whether we should be
guided more by forum state precedent or Texas precedent.  See Karstetter v.
Voss, 184 S.W.3d 396, 402-405 (Tex. App.CDallas
2006, no pet.) (performing minimum contacts analysis and citing both Texas and
Kansas precedent); Wu v. Walnut Equip. Leasing Co., 909 S.W.2d 273, 280
n.2 (Tex. App.CHouston [14th Dist.] 1995), rev=d on other grounds, 920 S.W.2d 285 (Tex. 1996) (citing both Texas and Pennsylvania
precedent and stating that A[t]he initial
question of whether the acts of the defendant provide a cognizable basis for
personal jurisdiction under the Pennsylvania long‑arm statute is one of
state law.  However, the issue of whether that exercise comports with the
constitutional due process is one of federal law.@).  Accordingly, in our analysis, we consider the facts of this case in
light of federal, Texas, and Alabama precedent.  The general principles are the
same, and we find that there would be no difference in outcome depending on
which state=s precedent is controlling.





[2]  In World-Wide Volkswagen, the Supreme Court
stated that: AThe forum State does not exceed its powers under the
Due Process Clause if it asserts personal jurisdiction over a corporation that
delivers its products into the stream of commerce with the expectation that
they will be purchased by consumers in the forum State.@  444 U.S. at 297.  As mentioned, in Asahi, a
plurality of the Court asserted that something more than mere placement in the
stream of commerce was required before jurisdiction could attach.  480 U.S. at
110-12.  In CMMC v. Salinas, the Texas Supreme Court noted that a
majority of the United States Supreme Court has never adopted or rejected the Asahi
plurality=s requirement of additional conduct directed at the
forum.  929 S.W.2d 435, 438-39 (Tex. 1996).  In Michiana, the Texas
Supreme Court noted that its own holdings have indeed followed the Asahi
requirement of additional conduct directed toward the forum state.  168 S.W.3d
at 786.  Interestingly, the Fifth Circuit has stuck with the broader stream of
commerce rule pronounced in World-Wide Volkswagen.  See, e.g., Ruston
Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 419-20 (5th Cir. 1993)
(following World-Wide Volkswagen and rejecting Asahi); see
also Luv n= Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 470 (5th Cir. 2006) (citing Ruston
and stating that the Fifth Circuit has consistently followed its adoption of World-Wide
Volkswagen and rejection of Asahi).  Here, as the court did in Michiana,
we find that the outcome is the same regardless of whether the principles in World-Wide
Volkswagen or the plurality principles in Asahi are applied.  See
Michiana, 168 S.W.3d at 786 (AWhichever
of these standards is ultimately correct, Michiana=s conduct meets none of them.@).





[3]  In Luv n= Care, a
manufacturer of baby bottles attempted to avoid personal jurisdiction by
arguing that it purposefully structured its conduct to avoid jurisdiction in
Louisiana (and other states).  438 F.3d at 468, 471.  Specifically, the
manufacturer delivered its product F.O.B. to Wal-Mart in Colorado; Wal-Mart
then took title and possession of the products and transported them to its
stores nationwide.  Id.  The court found that the F.O.B. term by itself
did not prevent the exercise of jurisdiction where other factors suggest that
jurisdiction is proper.  Id. at 471-72.  The other factors in Luv n= Care included
the quantity and regularity of shipments.  Id.  The other factors in the
present case are well-discussed in the text.  The Luv n= Care court
further explained that the primary purpose of a F.O.B. contract is to allocate
risk of loss, not to defeat jurisdiction.  Id. at 472.





[4]  The dissent asserts that we have not placed
sufficient emphasis on the transfer of title in Texas, citing American Type Culture Collection,
Inc. v. Coleman,
83 S.W.3d 801 (Tex. 2002); Schott Glas v. Adame, 178 S.W.3d 307 (Tex.
App.CHouston [14th Dist.] 2005, pet.
denied); and Zamarron v. Shinko Wire Co., 125 S.W.3d 132 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).  However each of these cases is
distinguishable from the present case.  To begin with, each is a general
jurisdiction case and not a specific jurisdiction case.  Am. Type Culture Collection, 83 S.W.3d at 808; Schott Glas,
178 S.W.3d at 317B18; Zamarron, 125 S.W.3d at
144.  This fact is emphasized not only in each of these cases but also in the
Fifth Circuit opinion upon which each of these cases relies:  Bearry v. Beech Aircraft Corp., 818 F.2d 370, 375-76 (5th Cir. 1987).  Additionally,
other circumstances in these cases demonstrate that the sales in question were
constructed specifically to avoid jurisdiction.  For example, in Schott Glas,
the Avast majority@ of
sales to the forum state were made through an independent sales representative
and an indirect subsidiary.  178 S.W.3d at 314B18.  Such is not the case here. 
Although passage of title (or an F.O.B. term) may be a relevant factor in
jurisdictional analysis, it is certainly not a decisive factor.  See supra
note 3.  Despite passage of title in Texas, the fact remains that appellants
made multiple sales to LP for use at its manufacturing facility in Alabama,
conducted negotiations with an LP employee stationed in Alabama, certified that
their product met the specifications for use in the Alabama manufacturing process,
and arranged and paid for the shipments from Texas to Alabama.