On Application for Rehearing
 

 BRYAN, Judge.
 

 The opinion of March 12, 2010, is withdrawn, and the following is substituted therefor.
 

 Mark Ryder, the defendant below, appeals from a default judgment entered in favor of the plaintiff below, James F. Ma-bry. We affirm.
 

 On July 27, 2007, Mabry sued Ryder, a resident of Virginia, alleging that Ryder had fraudulently induced him to buy units in People in Profit Systems, Inc. (“PIPS”), that those units constituted securities under Alabama law, and that they were part of a Ponzi scheme, which had resulted in Mabry’s losing the $42,022.67 he had paid for the PIPS units. Mabry stated claims of conversion, fraud, and violation of the Alabama statutes governing the sale of securities.
 

 Ryder, acting pro se, filed an answer denying liability and asserting, as an affirmative defense, that the trial court lacked in personam jurisdiction over him because he had not had sufficient contacts with the State of Alabama. Upon completion of discovery, the trial court set the action for trial on July 14, 2008.
 

 On May 23, 2008, Ryder moved the trial court to dismiss the action on the ground that it lacked in personam jurisdiction over him. Specifically, Ryder’s motion to dismiss asserted that Mabry had admitted in his responses to Ryder’s discovery requests that Ryder’s only contacts with the State of Alabama were four telephone calls that Mabry had made to Ryder while Ryder was in Virginia.
 

 Contemporaneously with the filing of his motion to dismiss, Ryder filed a motion for a summary judgment. As one of the grounds of his summary-judgment motion, Ryder asserted that the trial court lacked in personam jurisdiction, and he adopted his motion to dismiss as his statement of that ground.
 

 In response to Ryder’s motion to dismiss, Mabry asserted that the motion was untimely because, Mabry said, Rule 12(b), Ala. R. Civ. P., required that a motion to dismiss on the ground of lack of personal jurisdiction be made before Ryder filed his answer. In the alternative, Mabry asserted that, because Ryder had sold securities to an Alabama resident and those sales violated the Alabama Securities Act, § 8-6-1 et seq., Ala.Code 1975, the Alabama courts had personal jurisdiction over Ryder.
 

 The trial court did not rule on Ryder’s motions before the trial. Several days before the trial, which, as noted earlier, was scheduled for July 14, 2008, Ryder informed the trial court by letter that he would not be appearing at the trial and that he had previously asserted that the trial court lacked in personam jurisdiction over him in his answer and in two motions. When Ryder did not appear at the trial, the trial court entered an order on July 16, 2008, denying Ryder’s motion to dismiss, granting the oral motion for a default judgment that Mabry had made after Ryder failed to appear at trial, and setting a hearing on the issue of damages for August 18, 2008. The trial court did not expressly rule on Ryder’s summary-judgment motion; however, the trial court’s July 16, 2008, order is inconsistent with an intent to grant that motion.
 

 Ryder did not appear at the August 18, 2008, hearing. Mabry and his attorney appeared at the hearing and introduced evidence establishing a prima facie case that Ryder had violated the Alabama Secu
 
 *172
 
 rities Act and that Mabry was entitled to recover the total amount of $59,991.20 on his claims that Ryder had violated the Alabama Securities Act. On March 2, 2009, the trial court entered a default judgment against Ryder and awarded Ma-bry the full amount of the damages he had sought. The judgment stated:
 

 “This case comes before the Court on Plaintiff James F. Mabry’s (‘Mabry’) complaint against the defendant Mark Ryder (‘Ryder’) alleging violations of the Alabama Securities Act as well as fraud and conversion. The allegations contained in the complaint stem from losses incurred by Mr. Mabry due to his investment in a ‘high yield investment’ opportunity called People in Profit Systems, Inc. or ‘PIPS.’
 

 “This case was set for a bench trial on July 14, 2008. On July 11, 2008, a facsimile was received by this Court from Mr. Ryder declining to attend the trial. [Ryder’s] facsimile stated that the
 
 in personam
 
 jurisdictional arguments raised in his Answer, Motion for Summary Judgment, and Motion to Dismiss were the reason for not attending trial. The two aforementioned motions were not supported by affidavits or evidence of any kind — nor had a hearing of such motions been requested. True to his word, [Ryder] did not appear at trial. Mabry and his counsel appeared at trial and requested the Court enter a default against the defendant Ryder. This Court explained to Mabry and his counsel that upon entry of default, a hearing would be required not only as to damages but this Court would also require proof of the basic elements of Mabry’s claims — as this Court may require pursuant to Rule 55 of the Alabama Rules of Civil Procedure. On July 15, 2008, this Court, having considered the motions of [Mabry] and [Ryder], entered an Order (i) denying Ryder’s motions for lack of proper evidentiary support, (ii) granting Mabry’s motion for default, and (iii) setting a formal hearing.
 

 “On August 18, 2008, a hearing was held for the proof of damages and proof of the elements necessary to substantiate Mabry’s claims. As a preliminary matter, it was shown to the Court that Ryder had been investigated by the Alabama Securities Commission with respect to his PIPS related activities. The Court was presented with a certified copy of Cease and Desist Order, dated April 8, 2008, issued against Ryder. This order found Ryder, a former registered securities agent ... in the States of North Carolina and Virginia, to have been an agent of PIPS and to have violated the provisions of sections 8-6-3 and 8-6-4 of the Code of Alabama 1975, as amended (the ‘Code’), by: (i) selling unregistered PIPS securities in the State of Alabama and (ii) selling securities in the State of Alabama without being ... registered as [a] securities broker or agent in the State of Alabama. This order further barred Ryder from further selling securities ‘into, within or from’ the State of Alabama. Mr. Ryder did not contest the findings of this Cease and Desist Order. This uncontested order is significant because its findings touch on the allegations of this case and because the certified copy of the uncontested order presented to this Court constitutes ‘prima facie evidence of the contents of the entry or document certified.’ Ala.Code § 8-6-28.
 

 “After a review of the Cease and Desist Order, Mabry presented uncontro-verted testimony regarding the elements of his securities claims. Mabry testified that Ryder fraudulently induced him to invest in PIPS multiple times by: (i) touting his own high investment returns in PIPS; (ii) touting his being a part of
 
 *173
 
 the PIPS organization; (iii) touting his close relationship with certain ‘high up’ persons in the PIPS organization; (iv) claiming ‘insider’ knowledge of the inner-workings of the PIPS organization and its investment products; and (v) touting his investment knowledge as a person formerly in the securities field. These misleading representations were made by Ryder ... in approximately thirty (30) telephone conversations between Mabry and Ryder regarding the purchase of PIPS units between the months of April, 2005 and July, 2005 (both Mabry calling Ryder and Ryder calling Mabry).
 

 “Consistent with the Alabama Securities Commission’s order, Mabry stated that, in connection with his each and every purchase of PIPS units, he viewed Ryder to be an agent of the PIPS organization and that Ryder’s actions and sales pitches were consistent with that of an agent. Mabry testified that his discovery after the demise of PIPS that Ryder had received commissions in connection with his sales of PIPS units to Mabry in excess of $5,000 further confirmed his early conclusion that Ryder was acting on behalf of PIPS.
 

 “Mabry further testified that he invested a total of $42,022.67 in PIPS as a direct result of Ryder’s representations regarding PIPS. The amounts and dates were as follows: $481.50 on April 25, 2005, $9,950.00 on April 80, 2005, $2,500.00 on May 24, 2005, $2,600.00 on May 30, 2005, $3,000.00 on June 2, 2005, $3,091.17 on July 2, 2005, and $20,400.00 on July 29, 2005. Canceled checks, bank statements, and PIPS receipts were presented to the Court as evidence of the amounts and dates of investment. Ma-bry testified that he realized that PIPS was a seam in September, 2005 after the PIPS website had disappeared, Ryder failed to return his phone calls, and he read of the arrest of Mr. Brian Marsden, founder of the PIPS organization, in Malaysia for various fraud related bank crimes connected to the PIPS organization. After this discovery, Mabry was not willing or able to sell his PIPS units, which he then considered to be bogus, and he failed in his attempts to gain a return of his investment from Ryder and the PIPS organization.
 

 “Counts II and III of Mabry’s Complaint relate to the return of monies invested in unregistered securities and the return of monies invested in securities where misrepresentations were made in connection with their sale. Count II and Count III both involve violations of section 8-6-19 of the Code.
 

 “Section 8-6-19(a)(l) of the Code provides that any person who sells an unregistered security in violation of the Alabama Securities Act is liable ... to the person buying the security [from him for the consideration paid for the security,] together with interest at six percent per year from the date of payment, court costs and reasonable attorney fees, upon the tender of the security. All actions brought under section 8-6-19(a)(l) of the Code involving the sale of unregistered securities must be brought within two years of the sale of the security. Ala.Code § 8 — 6—19(f). According to the Alabama Securities Commission, ... Mabry purchased PIPS units through PIPS’ agent Ryder and these units constituted securities that were not registered in Alabama. Mabry testified to these unregistered sales and that $20,400.00 was invested on July 29, 2005 — within two years of the July 27, 2007 filing of Mabry’s complaint. Mabry retained his PIPS units and attempted to recover his investment from Ryder. Accordingly, under sections 8-6-19(a)(l) and -19(f) of the Code,
 
 *174
 
 Mabry is entitled to recover from Ryder this $20,400 investment, plus interest at six percent (6%) per year from payment and reasonable attorney fees. While all of the PIPS securities purchased by Ma-bry were unregistered, his earlier investments are precluded from recovery under section 8-6-19(a)(l) of the Code as these investments were made more than two years before the filing of Ma-bry’s Complaint. However, the earlier investments are still eligible for recovery under section 8-6-19(a)(2) of the Code.
 

 “Section 8-6-19(a)(2) of the Code provides that any person who sells or offers a security by means of any untrue statement of a material fact is liable ... to the person buying the security [from him for the consideration paid for the security,] together with interest at six percent per year from the date of payment, court costs and reasonable attorney fees, upon the tender of the security. All actions brought under section 8-6-19(a)(2) of the Code involving untrue statements in connection with the sale of securities must be brought within two years of the discovery of the misrepresentation or two years after discovery should have been made by exercising reasonable care. Ala. Code § 8 — 6—19(f). According to Mabry’s testimony, Ryder made material misrepresentations in connection with each and every sale of PIPS units to Ryder, including false representations regarding his own personal returns received through PIPS. Mabry exercised care by monitoring his PIPS investments but did not discover that the representations made by Ryder were false and that PIPS was a scam until September, 2005 — within two years of the July 27, 2007 filing of Mabry’s complaint. Mabry retained his PIPS units and attempted to recover his investment from Ryder. Accordingly, under sections 8-6-19(a)(2) and -19(f), Ma-bry is entitled to recover the entire $42,022.67 he invested in PIPS, plus interest at six percent (6%) per year from payment and reasonable attorney fees.
 

 “Considering the testimony and submissions by [Mabry], the Court finds that Mabry is entitled to recover the $42,022.67 he invested in PIPS, plus six percent (6%) per annum interest on the amounts invested totaling $8,230.67 and reasonable attorney fees of $17,718.75. Costs are taxed to [Ryder].”
 

 On March 25, 2009, Ryder filed a motion titled “Motion to Alter, Vacate, or Amend” in which he again asserted that the trial court lacked in personam jurisdiction over him. In addition, he asserted for the first time that he was not liable to Mabry because, he said, (1) he was not a dealer or broker of securities as defined by § 8-6-2, Ala.Code 1975; (2) he was not required to register as a dealer or agent in Alabama because, he said, he did not have an office in Alabama and he did not direct business communications to 5 clients in Alabama during any period of 12 consecutive months; (3) he was not engaged in the business of effecting transactions in securities; and (4) Mabry’s claims were barred by the applicable statute of limitations. In addition, he asserted that the trial court had erred (1) in admitting into evidence the certified copy of the cease-and-desist order issued by the Alabama Securities Commission to prove the truth of its contents despite the hearsay nature of its contents, (2) in finding in favor of Mabry with respect to his fraud claim, and (3) in finding in favor of Mabry with respect to his conversion claim. Mabry responded to Ryder’s postjudgment motion.
 

 On May 21, 2009, the trial court entered an order amending its judgment. In pertinent part, that order stated:
 

 
 *175
 
 “With this Court’s [March 2,] 2009 Opinion And Order in the above styled action having been returned by the Clerk’s Office for clarification, said Order is hereby AMENDED to clarify that on proof, Plaintiff, James F. Mabry is GRANTED Judgment by Default against the Defendant, Mark Ryder, in the amount of $59,991,20.
 

 “Said Judgment is comprised of the $42,022.67 [Mabry] invested in PIPS, plus six percent (6%) per annum interest on the amounts invested totaling $8,230.67 and reasonable attorneys fees in the amount of $9,737.86. Reasonable attorneys fees are determined by taking 33% of the first $10,000,00 of the Judgment and 20% of the remaining balance.”
 

 Following a hearing on June 15, 2009, the trial court, on June 22, 2009, entered an order in which it treated Ryder’s “Motion to Alter, Vacate, and Amend” as a Rule 55(c), Ala. R. Civ. P., motion for relief from the default judgment and denied the motion. Ryder then timely appealed to the supreme court, which transferred the appeal to this court on the ground that the appeal was within this court’s jurisdiction.
 

 Ryder first argues that the trial court erred in entering the default judgment against him and in denying him relief from that judgment because, he says, the trial court lacked in personam jurisdiction over him. He argues that the trial court lacked in personam jurisdiction over him because, he says, the only contacts between him and the State of Alabama were four telephone calls, all of which were initiated by Mabry.
 

 First, we note that the trial court received evidence at the August 18, 2008, hearing that indicated that Ryder had participated in approximately 30 telephone calls with Mabry in which Ryder had made representations regarding PIPS securities and that some of those telephone calls had been initiated by Ryder. Second, even if there were only four telephone calls and they were all initiated by Mabry, those four telephone calls would constitute sufficient contacts with this state to confer in personam jurisdiction on a court of this state if those telephone calls resulted in Ryder’s selling a security in this state.
 

 “Procedurally, jurisdiction over an out-of-state defendant is obtained pursuant to the ‘long-arm’ rule, Ala. R. Civ. P. 4.2(b), as amended August 1, 2004. A person or entity is subject to jurisdiction under Rule 4.2(b) when that ‘person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States.... ’ Rule 4.2(b) now embodies the ‘catchall’ clause that was found in subparagraph (I) of Rule 4.2 before it was amended. ‘The structure of former 4.2 included a “laundry list” of types of conduct that would subject an out-of-state defendant to personal jurisdiction in Alabama, as well as the “catchall” clause now contained in new 4.2(b).’ Committee Comments to Amendment to Rule 4.2 Effective August 1, 2004. ‘[S]ubparagraph (I) [was] but a restatement of the current definition of the federal constitutional standard.’ Committee Comments on 1977 Complete Revision to Rule 4.2.
 

 “That standard ‘ “is the minimum-contacts standard elucidated in
 
 International Shoe [Co. v. Washington,
 
 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ],”’ and its progeny.
 
 Bearden v. Byerly,
 
 494 So.2d 59, 61 (Ala.1986) (quoting
 
 Shaffer v. Heitner,
 
 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). Under that standard, ‘[a] physical presence in Alabama is not a prerequisite to person
 
 *176
 
 al jurisdiction over a nonresident.’
 
 Sieber v. Campbell,
 
 810 So.2d 641, 644 (Ala.2001). What is required, however, is that the defendant have such contacts with Alabama that it ‘“should reasonably anticipate being haled into court [here].” ’
 
 Dillon Equities v. Palmer & Cay, Inc.,
 
 501 So.2d 459, 462 (Ala.1986) (quoting
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
 

 “The standard is met where ‘the defendant [has] “purposefully availed” itself of conducting activity in the forum state, by directly targeting its [activities at] the state.’
 
 Toys ”R” Us, Inc. v. Step Two, S.A.,
 
 318 F.3d 446, 454 (3d Cir. 2003). ‘ “This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of ‘ “the unilateral activity of another person or a third person.” ””
 
 Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.,
 
 866 So.2d 519, 525-26 (Ala.2003) (quoting
 
 Elliott v. Van Kleef,
 
 830 So.2d 726, 731 (Ala.2002), quoting in turn
 
 Burger King Corp. v. Rudzewicz,
 
 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Thus, the ultimate question under Rule 4.2(b) is the same as under former Rule 4.2(a)(2)(I), namely, whether the out-of-state defendants have ‘some minimum contacts with this state [that] ... it is
 
 fair and reasonable
 
 to require [them] to come to this state to defend an action.’ (Emphasis added.)”
 

 Ex parte Reindel,
 
 963 So.2d 614, 617-18 (Ala.2007).
 

 In pertinent part, Section 8-6-12(a)(2), Ala.Code 1975, provides that a person sells securities in this state when “an offer to buy is made and accepted in this state.” In pertinent part, § 8-6-12(c), Ala.Code 1975, provides that an offer to buy is made in this state “when the offer ... originates from this state.” In pertinent part, § 8-6-12(d), Ala.Code 1975, provides that an offer to buy “is accepted in this state when acceptance ... is communicated to the of-feror in this state.” In this case, Ryder sold a security in Alabama because (1) Mabry was in this state when he communicated his offers to buy the PIPS securities to Ryder and (2) Mabry was in this state when Ryder communicated his acceptance of those offers to Mabry.
 
 See
 
 §§ 8-6-12(a)(2), 8-6-12(c), and 8-6-12(d).
 

 Thus, the issue is whether Ryder’s sale of securities in this state in the course of four telephone conversations initiated by Mabry constitutes sufficient contacts with this state to make it “
 
 \fair and reasonable
 
 to require [him] to come to this state to defend an action.’ ”
 
 Ex parte Reindel,
 
 963 So.2d at 618. We conclude that it is fair and reasonable to require Ryder to come to this state to defend Mabry’s action. By accepting Mabry’s offers to purchase securities, Ryder purposely availed himself of conducting activity in this state. Moreover, because Ryder accepted Mabry’s offers, he is not being haled into court in Alabama as a result of the unilateral activity of a third party. Finally, his acceptance of Mabry’s offers made it reasonable for him to anticipate that he might be haled into a court in this state. Therefore, we find no merit in Ryder’s argument that the trial court lacked in personam jurisdiction over him.
 

 Ryder also argues that the trial court erred in admitting the cease-and-desist order into evidence for the purpose of proving the truth of its contents because, he says, its contents constitute hearsay. However, Ryder did not appear at the August 18, 2008, hearing and timely object to the admission of the cease-and-desist order on the ground that it contained hearsay. Rule 103(a)(1), Ala. R. Evid., provides that error may not be predicated upon a ruling that admits evi
 
 *177
 
 dence unless “a timely objection or motion to strike appears of record.... ” Therefore, we cannot reverse the trial court’s judgment on the basis of a hearsay objection that Ryder did not make in the trial court in compliance with Rule 103(a)(1).
 

 In addition, Ryder argues that § 8-6-28, Ala.Code 1975, insofar as it provides that a certified copy of a document such as the cease-and-desist order constitutes prima faeie evidence of its contents, runs afoul of the Due Process Clause of the United States Constitution and Article 1, Section 13 of the Alabama Constitution of 1901. However, the record contains no indication that Ryder notified the attorney general of Alabama of his constitutional challenge to § 8-6-28, as required by § 6-6-227, Ala.Code 1975. Therefore, Ryder’s challenge to the constitutionality of § 8-6-28 is not properly before us.
 
 See Bratton v. City of Florence,
 
 688 So.2d 233, 234 (Ala.1996) (holding that the issue whether an ordinance was constitutional was not properly before the supreme court because the party making the challenge to the constitutionality of the ordinance had not notified the attorney general of the challenge as required by § 6-6-227).
 

 Ryder also argues that the trial court erred in entering the default judgment against him and in denying him relief from that judgment because, he says, his sales of PIPS securities in this state were exempt from the requirements of the Alabama Securities Act by virtue of § 8-6-3(b)(3), Ala.Code 1975, because, he says, he did not have an office in Alabama and did not direct business communications in this state to more than five clients. Section 8-6 — 3(b)(3) provides that “[i]t is unlawful for any person to transact business in this state as an
 
 investment adviser
 
 or
 
 investment adviser representative
 
 unless ... [h]e has no place of business in this state and during any period of 12 consecutive months does not direct business communications in this state in any manner to more than five clients” other than certain specified entities. (Emphasis added.) However, § 8-6-3(b)(3) does not contain any language exempting a person who transacts business in this state as an
 
 agent for securities
 
 from the requirement that he or she register pursuant to § 8-6-3(a) before transacting business as a securities agent in this state. Moreover, § 8 — 6—3(b)(3) does not contain any language exempting a security from the requirement that it be registered pursuant to § 8-6^4 before it is sold in this state. Accordingly, we find no merit in Ryder’s argument that his sales of securities in this state were exempt from the requirements of the Alabama Securities Act by virtue of § 8 — 6—3(b)(3).
 

 Ryder also argues that the trial court erred in entering the default judgment and in denying him relief from that judgment because, he says, Mabry’s claims that Ryder violated the Alabama securities laws were barred by the two-year statute of limitations contained in § 8 — 6—19(f), Ala. Code 1975. In pertinent part, § 8 — 6—19(f) provides:
 

 “No person may obtain relief under this section in an action involving the failure to register unless suit is brought within two years from the date of sale. All other actions for relief under this section must be brought within the earlier of two years after discovery of the violation or two years after discovery should have been made by the exercise of reasonable care.”
 

 The trial court correctly applied § 8-6-19(f) to Mabry’s claim under § 8-6-19(a)(1) seeking recovery for Ryder’s selling of unregistered securities to Mabry by finding in favor of Mabry only with respect to sales of securities that occurred within two years of the date Mabry filed this action. The trial court also correctly ap
 
 *178
 
 plied § 8-6-19(f) to Mabry’s claim under § 8-6-19(a)(2) seeking recovery for Ryder’s selling securities to Mabry by means of untrue statements of material facts; although the trial court found in favor of Mabry on that claim with respect to sales that occurred more than two years before Mabry filed this action, the evidence established that Mabry did not discover that Ryder’s statements were untrue until a date that was within two years of the date Mabry filed this action and that he could not have discovered that those statements were untrue by the exercise of reasonable care until a date that was within two years of the date he filed this action. Accordingly, we find no merit in Ryder’s argument that the trial court erred in applying the two-year statute of limitations contained in § 8-6-19(f).
 

 Finally, Ryder argues that trial court erred in entering the default judgment against him and in denying him relief from that judgment because, he says, Mabry failed to prove the essential elements of his fraud and conversion claims. However, a fair reading of the trial court’s judgment indicates that the trial court did not find in favor of Mabry with respect to his fraud and conversion claims — the trial court found in favor of Mabry only with respect to his claims that Ryder had violated § 8 — 6—19(a)(1) and § 8-6-19(a)(2). Therefore, Ryder’s final argument has no merit.
 

 Because Ryder has failed to establish that the trial court erred in entering the default judgment against him or in denying him relief from that judgment, we affirm the judgment of the trial court.
 

 APPLICATION FOR REHEARING GRANTED; OPINION OF MARCH 12, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
 

 PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 THOMPSON, P.J., concurs in the result, without writing.